# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2016-NMSC-035

Filing Date:  September 22, 2016

Docket No. S-1-SC-35101

EILEEN J. DALTON,

>        Plaintiff-Respondent,

v.

SANTANDER CONSUMER USA, INC.,

>        Defendant-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Sarah M. Singleton, District Judge**

Lewis Roca Rothgerber Christie LLP
Ross L. Crown
Albuquerque, NM

Reed Smith LLP
Terry B. Bates
Kasey J. Curtis
Los Angeles, CA

Grignon Law Firm
Margaret A. Grignon
Long Beach, CA

for Petitioner

Treinen Law Office, P.C.
Rob Treinen
Albuquerque, NM

Humphreys Wallace Humphreys
Lucius James Wallace
Robert David Humphreys

Tulsa, OK

Public Justice, P.C.
Jennifer Bennett
Oakland, CA

for Respondent

**OPINION**

**CHÁVEZ, Justice.**

**{1}** Eileen Dalton purchased two used cars under separate finance contracts which contained provisions that retained self-help remedies for both parties, and that allowed either party to compel arbitration of any claim or dispute arising out of the contracts that exceeded the jurisdiction of a small claims court, which in New Mexico is $10,000. Dalton contends that the arbitration clause is substantively unconscionable on its face, and therefore is unenforceable because the self-help and small claims carve-out provisions are unreasonably one-sided. We hold that the arbitration provision in this case is not substantively unconscionable because (1) lawful self-help remedies are extrajudicial remedies, and (2) the small claims carve-out is facially neutral because either party must sue in small claims court if its claim is less than $10,000, or arbitrate if its claim exceeds $10,000; as a result, the small claims carve-out is neither grossly unfair nor unreasonably one-sided on its face.

**I.      BACKGROUND**

**{2}** In 2010, Dalton entered into several finance contracts to purchase a 2003 Cadillac CTS (the Cadillac) and a 2010 Pontiac G6 (the Pontiac) from a used car dealer in Santa Fe. One or more of these contracts were sold to Santander Consumer USA, Inc. (Santander). The purchase price of the Cadillac was $13,297.93, for which Dalton received financing for $11,074.93 of the purchase price with a 24.99% annual interest rate and monthly payments of $325 for sixty months. The purchase price of the Pontiac was $15,965.37, for which she received $14,305.74 financing at a 25.99% annual interest rate with monthly payments of $398.36 for seventy-two months.

**{3}** Each finance contract contained an identical arbitration clause. The arbitration clause provided that "[a]ny claim or dispute, whether in contract, tort, statute or otherwise" arising out of or relating to the "credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship" would, at the election of either party, "be resolved by neutral, binding arbitration and not by a court action." However, the arbitration clause also stated that both parties "retain any rights to self-help remedies, such as repossession," as well as "the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction." In New Mexico, small claims actions are those in which the value of the claim does not exceed $10,000, exclusive of interest and costs.

2

NMSA 1978, § 35-3-3(A) (2001); NMSA 1978, § 34-8A-3(A)(2) (2001).

**{4}**     Dalton did not make her first payment on the Pontiac contract and the Pontiac was almost immediately repossessed without judicial action in February 2011. Later that month, Dalton filed a complaint in district court against a number of defendants alleging fraud, violations of the New Mexico Uniform Commercial Code, unfair trade practices, conversion, breach of contract, breach of the covenant of good faith and fair dealing, and breach of warranty of title. These claims related to the circumstances under which she purchased the vehicles and signed the finance contracts, as well as the alleged wrongful repossession of the Pontiac. Her complaint sought equitable, injunctive, and declaratory relief, as well as actual and punitive damages. She added Santander as a defendant to the suit in July 2012.

**{5}**     In January 2013, Santander filed a motion to compel arbitration of Dalton's claims based on the arbitration clause contained in the finance contracts. Dalton opposed this motion by arguing in part that the arbitration clause was unenforceable because it was substantively unconscionable under New Mexico law. After analyzing the effect of the small claims and self-help provisions, the district court agreed with Dalton, as did the Court of Appeals. *Dalton v. Santander Consumer USA, Inc.*, 2015-NMCA-030, ¶ 2, 345 P.3d 1086, *cert. granted*, 2015-NMCERT-003. We reverse both the district court and the Court of Appeals.

## II.     DISCUSSION

### A.     The Equitable Defense of Unconscionability

**{6}**     Courts may render a contract or portions of a contract unenforceable under the equitable doctrine of unconscionability when the terms are "unreasonably favorable to one party while precluding a meaningful choice of the other party." *Cordova v. World Fin. Corp. of N.M.*, 2009-NMSC-021, ¶ 21, 146 N.M. 256, 208 P.3d 901; *see also* NMSA 1978, § 55-2-302(1) (1961) ("If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."). Unconscionability is a legal question. *B & B Inv. Grp.*, 2014-NMSC-024, ¶ 12. Accordingly, we review a district court's determination of unconscionability de novo. *Id.*

**{7}**     "[U]nconscionability is an affirmative defense to contract enforcement," and thus the party claiming that defense bears the burden of proving that a contract or a portion of a contract should be voided as unconscionable. *Strausberg v. Laurel Healthcare Providers, LLC*, 2013-NMSC-032, ¶¶ 24, 39, 48, 304 P.3d 409. The burden of proving unconscionability refers only to "the burden of persuasion, i.e., the burden to persuade the factfinder" and not "the burden of production, i.e., the burden to produce evidence." *Id.* ¶ 24. A contract can be procedurally or substantively unconscionable. *Cordova*,

3

2009-NMSC-021, ¶ 21.

**{8}**    Only the issue of substantive unconscionability is before us, which requires us to consider "whether the contract terms are commercially reasonable and fair, the purpose and effect of the terms, the one-sidedness of the terms, and other similar public policy concerns" to determine "the legality and fairness of the contract terms themselves." *Id.* ¶ 22. Substantive unconscionability requires courts to examine the terms on the face of the contract and to consider the practical consequences of those terms. *See State ex rel. King v. B & B Inv. Grp., Inc.*, 2014-NMSC-024, ¶ 32, 329 P.3d 658 ("[S]ubstantive unconscionability can be found by examining the contract terms on their face."). Thus, the party bearing the burden of proving substantive unconscionability need not make any particular evidentiary showing and can instead persuade the factfinder that the terms of a contract are substantively unconscionable by analyzing the contract on its face.

**{9}**    As we explained in *Cordova*, "[c]ontract provisions that unreasonably benefit one party over another are substantively unconscionable." 2009-NMSC-021, ¶ 25. In that case, a purportedly bilateral arbitration clause between a lender and a borrower contained a unilateral carve-out provision exempting the lender from mandatory arbitration when it sought remedies, "including[,] but not limited to, judicial foreclosure or repossession" in the event of a default by the borrower. *Id.* ¶¶ 3-4 (internal quotation marks omitted). The borrower argued that the arbitration clause rendered the finance contract "grossly unfair and one-sided" because it allowed the lender to require the borrower to arbitrate any of the borrower's claims while reserving to the lender "the exclusive option of seeking its preferred remedies through litigation." *Id.* ¶ 20. We agreed and held that the arbitration provision was "grossly unreasonable and against our public policy under the circumstances" of that case, *id.* ¶ 31, and was therefore substantively unconscionable. *Id.* ¶ 32.

**{10}**    Similarly, in *Rivera v. American General Financial Services, Inc.*, we analyzed an arbitration provision between a lender and a borrower that required the borrower to arbitrate any claims against the lender while exempting from mandatory arbitration the lender's "self-help or judicial remedies" relating to the property securing the transaction and any claims that the lender might have "[i]n the event of a default." 2011-NMSC-033, ¶ 3, 150 N.M. 398, 259 P.3d 803 (internal quotation marks omitted). In *Rivera* we again concluded that it was unreasonably one-sided that the lender "retained the right to obtain through the judicial system the only remedies it was likely to need," while "forcing [the borrower] to arbitrate any claim she may have" through an arbitration carve-out applying only to the lender. *Id.* ¶ 53. In the circumstances of that case, the arbitration provision was substantively unconscionable and void under New Mexico law. *Id.* ¶ 54. Notably, both *Cordova* and *Rivera* involved unilateral carve-outs that explicitly exempted any judicial remedies a lender was likely to need from mandatory arbitration while providing no such exemption for the borrower.

**{11}**    With this background in mind, we turn to the arbitration clause in this case and discuss its carve-outs exempting self-help remedies and small claims actions from mandatory

4

arbitration.

**B.     The Explicit Exclusion of Self-Help Remedies from Mandatory Arbitration Is Irrelevant to Assessing Unconscionability in this Case**

**{12}**     Santander contends that the bilateral self-help carve-out in the arbitration clause merely "recognizes the existence" of self-help remedies, which "exist *outside* of the judicial system." (Emphasis in original.)  We agree.  New Mexico has codified the right of a secured creditor to repossess collateral after default "without judicial process" if the creditor can proceed without a breach of the peace.  NMSA 1978, § 55-9-609(b)(2) (2001).  This is self-help repossession.  As we have previously recognized, if this process is carried out in compliance with relevant statutory provisions and without any involvement by the police, the courts, or any other state actor, it is a permissible "purely private" remedy.  *See, e.g.*, *Waisner v. Jones*, 1988-NMSC-049, ¶ 10, 107 N.M. 260, 755 P.2d 598.  However, if the secured creditor seeks to repossess the collateral after default "pursuant to judicial process" under Section 55-9-609(b)(1), the creditor has initiated judicial repossession, which is not a private remedy.

**{13}**     As Santander concedes, judicial repossession is not a self-help remedy, and therefore it would not be exempted from arbitration by the contracts' reservation of self-help remedies.  Importantly, this distinguishes the arbitration carve-out here from those discussed in *Rivera* and *Cordova* because in those cases the lender retained the right to pursue judicial repossession in the event of a default.  *Rivera*, 2011-NMSC-033, ¶ 3; *Cordova*, 2009-NMSC-021, ¶ 4.  Thus, we disagree with Dalton's contention that this Court's opinion in *Rivera* held that self-help repossession is a remedy that must be obtained through an arbitral forum if the parties have agreed to arbitrate all disputes.  Instead, *Rivera* clarified that the remedy of *judicial* repossession, although highly regulated by statute, could be granted by an arbitrator.  2011-NMSC-033, ¶¶ 51-52.  In so holding, we noted that " '[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution *in an arbitral, rather than a judicial, forum*.' "  *Id.* ¶ 51 (emphasis added) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)).  Hence, the exemption of all foreclosure and repossession actions from mandatory arbitration in *Rivera* meant that the defendant "retained the right to obtain *through the judicial system* the only remedies it was likely to need" while "extinguishing [the plaintiff's] right to *access the courts* for any reason."  *Rivera*, 2011-NMSC-033, ¶ 53 (emphasis added).

**{14}**     By contrast, the arbitration clause in this case does not specifically retain Santander's right to seek judicial repossession through the courts.[1]  Although parties to a contract could

---

[1]If Santander were to pursue a judicial repossession pursuant to the contracts in this case, whether the value of the vehicle exceeded $10,000 would dictate when Santander must pursue judicial repossession in small claims court or through arbitration.

5

specifically agree to forego any self-help remedies in favor of arbitration, in the absence of such a provision, self-help remedies are not otherwise subject to mandatory arbitration. Thus, the contract's recognition that the parties retained private self-help remedies in this case does not bear on whether the arbitration clause is one-sided. *See Sanchez v. Valencia Holding Co., LLC*, 353 P.3d 741, 756 (Cal. 2015) ("[A]rbitration is intended as an alternative to litigation, and the unconscionability of an arbitration agreement is viewed in the context of the rights and remedies that otherwise would have been available to the parties. Self-help remedies are, by definition, sought outside of litigation . . . ." (citation omitted)).

**{15}** Dalton cites *Preston v. Ferrer*, 552 U.S. 346 (2008) to support her assertion that a valid agreement to arbitrate "waives the right to pursue all other dispute resolution mechanisms—judicial or not." In *Preston*, the United States Supreme Court determined that an agreement to arbitrate all disputes regarding the terms of a contract required that the parties' claims be submitted to an arbitrator rather than the state administrative agency where such disputes would normally be adjudicated under state law. *Id.* at 350-53, 355, 363. The *Preston* Court specifically disapproved of "the distinction between judicial and administrative proceedings" adopted by the lower court in that case and clarified that "[w]hen parties agree to arbitrate all questions arising under a contract, the [Federal Arbitration Act] supersedes state laws lodging primary jurisdiction in another forum, whether judicial or administrative." *Id.* at 359. However, self-help remedies, which are private and nonadjudicatory by their very nature, are categorically different from the administrative and judicial proceedings addressed by *Preston*. Therefore, we do not interpret *Preston* to compel a particular result in this case.

**{16}** Having established that the carve-out provision's reservation of self-help remedies is irrelevant to the question of substantive unconscionability in this case, we next assess the small claims carve-out.

**C.    The Arbitration Provision Is Not Unconscionable on Its Face**

**{17}** At the hearing on Santander's motion to compel arbitration, the district court acknowledged that the bilateral carve-out provision in this case was neutral on its face. Both parties provided argument as to the practical effect of the small claims carve-out in the context of an automobile finance contract. According to Dalton, it was self-evident that consumers would be most likely to bring claims alleging "[a]uto fraud" or "financing fraud," which were "cases that clearly have [a] value over $10,000," apparently based on the personal experience of Dalton's attorney in bringing such cases in the past.

**{18}** The district court concluded that the small claims provision was one-sided "if common sense is employed and practical realities are considered" because consumers would most likely have to arbitrate consumer fraud claims, claims for unfair practices, or other auto fraud or financing fraud claims, while Santander's most likely remedies were related to repossession after a default on the loan and could be pursued through self-help or in small claims court rather than arbitration. On that basis, the district court determined that the

bilateral language in the carve-outs was "subterfuge" and that the exemptions actually operated in an unfairly one-sided manner. We disagree.

**{19}** No New Mexico appellate decision has determined that a bilateral small claims carve-out was unreasonably one-sided or grossly unfair. Indeed, in *Figueroa v. THI of New Mexico at Casa Arena Blanca, LLC*, the Court of Appeals assumed that an exemption from mandatory arbitration for claims under $2,500 granted "some judicial rights" to nursing home residents. 2013-NMCA-077, ¶ 29, 306 P.3d 480. Other jurisdictions have similarly determined that a small claims carve-out is not unfairly one-sided in favor of the lender. *See Mansfield v. Vanderbilt Mortg. & Fin., Inc.*, 29 F. Supp. 3d 645, 656 (E.D.N.C. 2014) (assuming that a bilateral small claims exception to a mandatory arbitration agreement was not unreasonably one-sided in favor of either party); *Sanchez*, 353 P.3d at 756 (assuming that a small claims carve-out in an automobile finance contract likely favored the consumer). In fact, Dalton's counsel conceded at oral argument that the bilateral small claims provision would be insufficient on its own to establish substantive unconscionability.

**{20}** In recent cases where this Court has voided an arbitration provision for substantive unconscionability, there was little ambiguity as to the one-sided operation of the examined provision or the exclusive benefits that inured only to the drafting party. In *Cordova*, the lender explicitly reserved for itself judicial remedies in *all instances* of default by the borrower, while leaving the borrower with no ability to go to court "*for any reason whatsoever*." 2009-NMSC-021, ¶¶ 26-27 (emphasis added). Thus, the arbitration provision was unreasonably beneficial to the lender because it was "highly unlikely" that the lender would ever be prevented from bringing any of its claims in its chosen forum, whether through arbitration or litigation, while as a practical matter, the borrower would never have that option. *See id.* ¶ 27; *see also Padilla v. State Farm Mut. Auto. Ins. Co.*, 2003-NMSC-011, ¶ 10, 133 N.M. 661, 68 P.3d 901 (determining that a provision was substantively unconscionable because it granted appeal rights in situations where only an insurer would logically appeal, and it provided no appeal rights whatsoever in situations where only an insured would logically appeal). Further, in *Rivera*, an arbitration provision was unreasonably beneficial to the lender where the lender had the option of choosing its forum in *all cases* where it sought to enforce its rights to the collateral securing the loan, while the borrower did not have this option with respect to "*any claim* she may have [had]." 2011-NMSC-033, ¶ 53 (emphasis added). In this case, the arbitration provision and its carve-outs do not unambiguously benefit the drafting party alone, unlike the clauses discussed in *Padilla*, *Cordova*, and *Rivera*.

**{21}** Gross unfairness is a bedrock principle of our unconscionability analysis. *See Rivera*, 2011-NMSC-033, ¶¶ 48-49. We are not persuaded that allowing both parties in this case complete access to small claims proceedings, even if one party is substantially more likely to bring small claims actions, is at all unfair. Santander points out that there are "legitimate, neutral reasons" for the parties to exclude small claims actions from arbitration, including streamlined pretrial and discovery rules, *compare, e.g.*, Rule 1-026 NMRA (setting forth detailed rules for discovery procedures in district court), *with* Rule 2-501 NMRA

(setting forth simplified discovery procedures for actions in magistrate court), and the cost-effectiveness of small claims actions compared to arbitration. *See Licitra v. Gateway, Inc.*, 734 N.Y.S.2d 389, 394-97 (N.Y. Civ. Ct. 2001), *order aff'd as modified* (Oct. 9, 2002) (refusing to compel arbitration of a consumer claim brought in small claims court, despite a mandatory arbitration clause, due to the greater expense and inconvenience of arbitration procedures for resolving small claims). Moreover, private arbitration organizations also recognize the importance of bilateral small claims carve-outs in consumer contracts as a matter of basic fairness. It is one of the guiding due process principles of the American Arbitration Association (AAA) that arbitration agreements should "make it clear that all parties retain the right to seek relief in a small claims court for disputes or claims within the scope of its jurisdiction." AAA National Consumer Disputes Advisory Committee, *Consumer Due Process Protocol Statement of Principles*, Principle 5 at 2, https://adr.org/aaa/ShowPDF?doc=ADRSTG_005014 (April 17, 1998) (last accessed August 25, 2016). Likewise, Judicial Arbitration and Mediation Services, Inc. (JAMS) requires as a minimum standard of procedural fairness that "no party shall be precluded from seeking remedies in small claims court for disputes or claims within the scope of its jurisdiction." *JAMS Policy on Consumer Arbitrations Pursuant to Pre-Dispute Clauses Minimum Standards of Procedural Fairness*, Minimum Standard 1(b) at 3 (July 15, 2009), https://www.jamsadr.com/files/Uploads/Documents/JAMS-Rules/JAMS_Consumer _Min_Stds-2009.pdf (last accessed August 25, 2016).

**{22}**    New Mexico public policy is also relevant to our analysis of a claim of substantive unconscionability and counsels against an unconscionability determination in this case. *See Strausberg*, 2013-NMSC-032, ¶ 33. New Mexico public policy favors economical and efficient judicial proceedings. For example, our procedural rules must be "construed and administered to secure the just, speedy and inexpensive determination of every action." Rule 1-001(A) NMRA. The Uniform Arbitration Act likewise recognizes that a " 'disabling civil dispute clause' " includes a clause requiring a consumer to "assert a claim . . . in a forum that is less convenient, more costly or more dilatory than a judicial forum established in this state for resolution of the dispute." NMSA 1978, § 44-7A-1(b)(4)(a) (2001). The Uniform Arbitration Act provides that such clauses in arbitration agreements are "unenforceable against and voidable by [a] consumer, borrower, tenant or employee." NMSA 1978, § 44-7A-5 (2001). Both parties benefit from the economy and efficiency of a small claims court when either party has a claim worth less than $10,000. When a claim exceeds $10,000, the additional expense of an arbitration may be justified. We are hesitant to adopt a holding that might discourage bilateral small claims carve-outs, and thereby curtail the availability of small claims proceedings to New Mexico consumers or otherwise frustrate New Mexico's broad public policy favoring economy and efficiency in dispute resolution.

**{23}**    As we have discussed, both the Court of Appeals and the district court erred as a matter of law by concluding that the arbitration provision in this case was substantively unconscionable on its face. However, we note that the district court's order in this case relied solely on substantive unconscionability without addressing Dalton's other affirmative defenses that the Pontiac contract is unenforceable because it was procured by coercion or

duress and that judicial estoppel bars Santander from enforcing the arbitration provision in the Pontiac contract. We express no conclusions regarding those defenses.

## III.    CONCLUSION

**{24}**    The self-help and small claims carve-out provisions in the arbitration clause of the finance contracts are not substantively unconscionable. Therefore, Dalton did not satisfy her burden of proving a facial challenge to the arbitration clause. We reverse the Court of Appeals and remand to the district court for proceedings consistent with this opinion.

**{25}    IT IS SO ORDERED.**

                                          _____

                                          **EDWARD L. CHÁVEZ,  Justice**

**WE CONCUR:**

_____
**CHARLES W. DANIELS, Chief Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
 **BARBARA J. VIGIL, Justice**

_____
**JUDITH K. NAKAMURA, Justice**

9