This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**BEVERLY PEAVY, Deceased, by**
**THE PERSONAL REPRESENTATIVE**
**OF THE WRONGFUL DEATH ESTATE,**
**KEITH PEAVY,**

      Plaintiff-Appellee,

**v.**                                                    No. A-1-CA-35494

**SKILLED HEALTHCARE GROUP,**
**INC., SKILLED HEALTHCARE, LLC,**
**THE REHABILITATION CENTER OF**
**ALBUQUERQUE, LLC, and**
**PATRICIA WALKER, LPN,**

      Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Denise Barela Shepherd, District Judge**

Feliz A. Real
Albuquerque, NM

Pitman, Kalkhoff, Sicula & Dentice
Jeffrey A. Pitman
Milwaukee, WI

for Appellee

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Sandra Beerle
Jocelyn Drennan
Albuquerque, NM

for Appellants

**MEMORANDUM OPINION**

**VANZI, Chief Judge.**

**{1}** Defendants appeal the district court's denial of their motion to compel arbitration. After an evidentiary hearing, the district court concluded that the arbitration agreement at issue was substantively unconscionable and therefore unenforceable and invalid. We agree with the district court's ruling that the arbitration agreement is substantively unconscionable and affirm. We also affirm the district court's subsequent denial of Defendants' motion for summary judgment on federal preemption grounds.

**BACKGROUND**

**{2}** Beverly Peavy, a resident of the Rehabilitation Center of Albuquerque (the Facility), designated her son, Keith Peavy (Plaintiff), as her durable power of attorney for health care. After she was readmitted to the Facility in October 2008, Plaintiff signed a seventy-eight page admission agreement with the Facility on his mother's behalf. The admission agreement included an arbitration agreement, the relevant provisions of which we briefly set out. The agreement provided that any dispute between the parties would be resolved by arbitration. The agreement defined "dispute" as "any and all disputes associated with this [a]rbitration

2

[a]greement and the relationship created by the [a]dmission [a]greement and/or the provision of services under the [a]dmission [a]greement (including, without limitation, . . . claims for negligent care or any other claims of inadequate care provide[d] by the Facility; claims against the Facility . . .)[.]" However, the agreement excepted from arbitration "any disputes pertaining to collections or discharge of residents."

{3}    Ms. Peavy died in April 2010. Plaintiff, as personal representative of his mother's wrongful death estate, filed suit against Skilled Healthcare Group, Inc.; Skilled Healthcare LLC; The Rehabilitation Center of Albuquerque, LLC; and Patricia Walker, LPN (collectively, Defendants). The complaint alleged wrongful death, negligence, negligent or intentional misrepresentation, unfair trade practices, and sought punitive damages, all of which allegedly arose out of Ms. Peavy's care at the Facility. Pursuant to NMSA 1978, Section 44-7A-8(a)(2) (2001) of the Uniform Arbitration Act, NMSA 1978, §§ 44-7A-1 to -32 (2001), Defendants filed a motion to dismiss and/or stay litigation and to compel arbitration based on the admission agreement and the arbitration agreement. In reply to Plaintiff's argument that the arbitration agreement was unconscionable because it contained an unfairly one-sided exception for collections actions and pursuant to our decision in *Bargman v. Skilled Healthcare Group, Inc.*, 2013-NMCA-006, 292 P.3d 1, Defendants requested an opportunity to show that the discharge and collections

3

exceptions did not make the arbitration agreement "unfairly and unreasonably one-sided." The district court granted Defendants' request and held an evidentiary hearing after which it entered extensive findings of fact and conclusions of law. Based on the evidence presented, the court concluded that the arbitration agreement was substantively unconscionable and denied Defendants' motion.

{4}     Several witnesses testified at the hearing. With regard to the substantive unconscionability claim, the district court relied primarily on the testimony of the Facility's administrator, Kathy Correa. The court's unchallenged findings are as follows. As the administrator, Ms. Correa is responsible for the supervision of accounts receivable and collections owed by residents for services rendered. She testified that the Facility's accounts receivable typically range from $1 to $10,000 for each patient. The Facility has a collections policy that provides, in relevant part:

> It is the responsibility of each facility to ensure timely and effective collections measures. . . . Once a private balance meets the criteria for Collections, a team of dedicated collectors in the Collection Agency will assume full responsibility for sustaining aggressive collective efforts through resolution of the account. . . . Private accounts will be placed with a collection agency for collection when all the following criteria are met: Resident has been discharged for at least 60 days; private account balance is greater than $100; and no private payment has been made within 60 days. . . . Exceptions: In the situation of estate claims, the [F]acility will file a claim with the probate court within the allowable time frame. The [F]acility may opt to take an account to small claims if assets are available[.]

4

{5}     After the Facility has exhausted all internal efforts to collect a payment, the account receivable is deemed uncollectible, and it is the Facility's "policy and practice to write off the account as a bad debt and to refer it to a consultant for possible placement with a collection agency." Notwithstanding the above policy or that the Facility has the option to sue a resident or her agent for an unpaid bill, "neither [the Facility] nor any collection agency [acting on its] behalf has ever filed a lawsuit for collection in district court, probate court, metropolitan court or otherwise." According to Ms. Correa, it would not be practical or cost effective for the Facility to hire an attorney to pursue a lawsuit or arbitrate claims under $10,000, particularly if it was required to arbitrate due to the costs associated with arbitration, namely the arbitrators' fees. The Facility appears to have offered no independent evidence to support this contention.

{6}     Based on Ms. Correa's testimony, as well as its review of the relevant provisions of the admission agreement, arbitration agreement, and collections policy, the district court reached the following conclusions. First, the court concluded that the arbitration provision "at issue herein is facially bilateral as it allows both the nursing home and nursing home residents to take to court 'disputes pertaining to collections or discharge of residents.' " The court nevertheless concluded that, although Defendants were afforded the opportunity to provide evidence to factually rebut that it is not unfair or unreasonable to except such

5

claims from arbitration, "[t]he evidence presented by Defendants as to the application of the [a]rbitration provision failed to rebut that the practical effect of the [a]greement unreasonably favors . . . Defendants." The district court elaborated on its reasoning, stating that "[w]hile ostensibly bilateral on its face, this [a]rbitration [a]greement provision is substantively unconscionable since it mandates arbitration of Plaintiff's most important and most likely claims while exempting from arbitration the claims most likely to be brought by . . . Defendants and, as such, is unfair and unreasonably one-sided." Consequently, the arbitration agreement was unenforceable and invalid.

{7}    Defendants subsequently filed a motion to amend the district court's findings and conclusions and to "alter" its substantive unconscionability determination. Defendants argued that the district court erred in relying on *Ruppelt v. Laurel Healthcare Providers, LLC*, 2013-NMCA-014, 293 P.3d 902, as outcome determinative and that it failed to follow the *Bargman* case-by-case analytical approach. Defendants also filed a motion for summary judgment based on a recent Tenth Circuit holding that the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16 (2012), "preempts the type of substantive unconscionability challenge that Plaintiff made to the [a]rbitration [a]greement in this case—i.e., one that is based on state law which views arbitration as providing an inferior means of dispute resolution." The district court denied both motions. This appeal followed.

6

**DISCUSSION**

{8}     On appeal, Defendants make two arguments. First, Defendants argue that the district court erred by failing to apply the substantive unconscionability analysis set forth in *Bargman* and finding the collections exception unconscionable. Second, Defendants argue that the district court erred by failing to follow recent Tenth Circuit case law holding that the FAA preempts New Mexico's substantive unconscionability doctrine.

**Standard of Review**

{9}     A district court's denial of a motion to compel arbitration is subject to de novo review. *Cordova v. World Fin. Corp. of N.M.*, 2009-NMSC-021, ¶ 11, 146 N.M. 256, 208 P.3d 901. Whether an arbitration agreement is unconscionable also presents a question of law subject to de novo review. *Id.* And we interpret statutes, such as the FAA, de novo as well. *Strausberg v. Laurel Healthcare Providers, LLC*, 2013-NMSC-032, ¶ 25, 304 P.3d 409. Neither Plaintiff nor Defendants challenge the district court's findings of fact, and consequently, we accept them as true. *See Seipert v. Johnson*, 2003-NMCA-119, ¶ 26, 134 N.M. 394, 77 P.3d 298 ("An unchallenged finding of the trial court is binding on appeal.").

**The Arbitration Agreement Is Substantively Unconscionable**

{10}     A contract is unenforceable if a court determines it is procedurally or substantively unconscionable or a combination of the two. *Rivera v. Am. Gen. Fin.*

7

*Servs., Inc.*, 2011-NMSC-033, ¶ 47, 150 N.M. 398, 259 P.3d 803. "Substantive unconscionability concerns the legality and fairness of the contract terms themselves." *Cordova*, 2009-NMSC-021, ¶ 22. When analyzing a contract for substantive unconscionability, our courts consider "whether the contract terms are commercially reasonable and fair, the purpose and effect of the terms, the one-sidedness of the terms, and other similar public policy concerns." *Id.* A court may render a contract or contract provision unenforceable if it is "unreasonably favorable to one party while precluding a meaningful choice of the other party." *Id.* ¶ 21.

{11} Our Court has addressed the substantive unconscionability of this exact arbitration agreement on at least two prior occasions. *See Bargman*, 2013-NMCA-006, ¶¶ 1, 4; *Ruppelt*, 2013-NMCA-014, ¶¶ 1, 3; *see also Figueroa v. THI of N.M. at Casa Arena Blanca, LLC*, 2013-NMCA-077, ¶ 28, 306 P.3d 480 (determining that a similar arbitration clause, which contained exclusions for guardianship actions and small claims, was substantively unconscionable). In *Ruppelt*, we determined that, although the collections exception at issue may facially have appeared to apply evenhandedly, the "practical effect" of the ostensibly bilateral clause was to unreasonably favor the nursing home. 2013-NMCA-014, ¶¶ 15, 18 ("Common sense dictates that claims relating to collection of fees and discharge of residents are the types of remedies that a nursing home, not its resident, is most

8

likely to pursue."). Thus, we held that the arbitration agreement was substantively unconscionable because it allowed the defendants to choose "the forum to resolve their disputes that were presumptively deemed to be 'most likely,' while simultaneously forcing . . . the weaker party[] to arbitrate her most likely disputes." *Id.* ¶ 18. Because the defendants did not present any factual evidence to the district court rebutting the one-sided nature of the claims exempted from arbitration, however, we did not "rule out the possibility that probative evidence could be offered in this type of case." *Id.* ¶ 17.

{12}     Shortly after *Ruppelt*, we issued our decision in *Bargman*—another case involving an arbitration agreement with the same collections exemption. *See Bargman*, 2013-NMCA-006, ¶ 18. The defendants there argued that the collections exception was conscionable because it would not be cost effective for them to pursue collections if they had to arbitrate due to "non-specific 'sums involved' in collections disputes" and the cost of paying for the arbitrators. *Id.* ¶ 22. However, they did not present any evidence regarding these matters at the district court level and requested we remand the case for an evidentiary hearing. *Id.* ¶ 23. Noting that no New Mexico case has laid down a "bright-line, inflexible rule that excepting from arbitration any claim most likely to be pursued by the defendant drafter will void the arbitration clause as substantively unconscionable[,]" we said that "cases should . . . be examined on a case-by-case basis." *Id.* ¶ 17. Accordingly, we

remanded the matter in order to give the defendants "the opportunity to present evidence tending to show that the collections exclusion is not unreasonably or unfairly one-sided such that enforcement of it is substantively unconscionable." *Id.* ¶ 24.

**{13}** It is against this backdrop that we decide this case. Defendants argue that the district court did not fully apprehend *Bargman*'s clarification that substantive unconscionability should be analyzed on a case-by-case basis to determine if the exception is reasonable and fair in light of the actual evidence presented. Instead, Defendants argue, the district court viewed our analysis in *Ruppelt* as outcome determinative, holding that the exception was unconscionable because Defendants failed to prove that the practical effect of the exception was not one-sided. According to Defendants, had the district court correctly applied *Bargman* and focused on whether the exception was reasonable and fair, despite its one-sidedness, it would have held that the exception was conscionable in light of the evidence presented. We disagree.

**{14}** At the outset, we reiterate that, because unconscionability is an affirmative defense to contract enforcement, the party claiming that defense bears the burden of proving that a contract, or a portion thereof, should be voided as unconscionable. *Strausberg*, 2013-NMSC-032, ¶¶ 39, 48. However, the party bearing the burden of proving unconscionability need not make any "particular

10

evidentiary showing and can instead persuade the fact[-]finder that the terms of a contract are substantively unconscionable by analyzing the contract on its face." *Dalton v. Santander Consumer USA, Inc.*, 2016-NMSC-035, ¶ 8, 385 P.3d 619. Once a facial threshold of unconscionability has been met by the moving party, the opposing party is then allowed to present evidence tending to show that the arbitration exclusion "is not unreasonably or unfairly one-sided such that enforcement of it is substantively unconscionable." *Bargman*, 2013-NMCA-006, ¶ 24.

{15}     While there is no "bright-line, inflexible rule" that excepting from arbitration any claims the drafter is most likely to pursue will void the arbitration clause as substantively unconscionable, *id.* ¶ 17, we have previously decided that this specific arbitration exception is facially unconscionable. *Ruppelt*, 2013-NMCA-014, ¶ 15; *see Figueroa*, 2013-NMCA-077, ¶ 31 ("Common sense dictates that the most likely claims [the d]efendant would have against a resident would be related to its provision of services to that resident: i.e., the collection of fees for services[.]"). The question here, therefore, is whether Defendants presented sufficient evidence to show why—despite our prior ruling to the contrary—the collections exclusion was not unfairly one-sided and was justified. We agree with the district court that they did not and that Defendants "failed to rebut that the practical effect of the [arbitration a]greement unreasonably favors . . . Defendants."

11

{16} The undisputed evidence demonstrated that the Facility's accounts receivable were typically below $10,000 for each resident. Although neither the Facility nor any collection agency on the Facility's behalf ever filed a lawsuit for collection, the Facility never told any resident or resident's agent that it would not sue them for an unpaid bill. Indeed, the collection letters sent by the Facility to residents/agent included a provision stating, "Your account is seriously past due. Please make payment arrangements with the business office to avoid legal action." Our review of the unchallenged findings establish that Defendants offered nothing further below to rebut the thrust of our prior holdings: that the collections exemption here is another way of exempting from arbitration claims Defendants are most likely to bring, and that that it is unreasonably or unfairly one-sided such that enforcement of it is substantively unconscionable. We reject Defendant's argument that there may be some reasonable justification for the collections exemption because paying arbitrators would be cost-prohibitive. Defendants could have, but did not, present evidence to the district court regarding the costs involved for hiring arbitrators, even though the burden was theirs to do so.

{17} The dissent maintains that the fact that "neither the Facility nor a collection agency acting on its behalf had ever filed a collection lawsuit in any court[,]" and that the price "paid [to] a lawyer to conduct an asset search to help determine whether a lawsuit would be worthwhile," in large part satisfies the evidentiary

12

threshold contemplated by the Facility. Dissent Op. ¶¶ 26, 28. But to so conclude would not only serve to enforce an agreement identical to that which we have twice concluded was unenforceable based upon the same concerns about substantive unconscionability as were previously resolved as a matter of law, it would also leave open to future litigation the very same sort of non-arbitrable action that the Facility has heretofore determined to be cost-prohibitive to pursue despite its research into the feasibility of such a lawsuit or collection effort. Where, as here, an agreement contains language that has been determined to be substantively unconscionable, we consider the mere fact that thus far it is too expensive for a facility to pursue to be little assurance that one day it will not be.

{18} Finally, we reject Defendants' argument that the district court "did not fully apprehend and follow this Court's substantive conscionability analysis in *Bargman*" because it did not cite *Bargman* in its findings and conclusions. Defendants requested an evidentiary hearing pursuant to *Bargman*. The district court granted that request. The fact that it did so demonstrates the court's awareness of and compliance with *Bargman.* We note as well that the district court's conclusions of law necessarily demonstrate that it understood *Bargman*'s requirement that arbitration cases should be decided on a case-by-case basis. Thus, we disagree that the absence of a citation to *Bargman* commands the conclusion that the district court failed to "apprehend and follow" *Bargman*'s substantive

13

conscionability analysis. As a final matter, Defendants do not point to anything in the district court's ruling that suggests the court did not consider all of the evidence presented or that it did not examine this case individually.

{19}    Defendants also cite to a recent New Mexico Supreme Court case, *Dalton*, in support of their position that the collections exception was conscionable. In *Dalton*, our Supreme Court held that an arbitration clause provision excepting small claims of less than $10,000 from arbitration was "neither grossly unfair nor unreasonably one-sided on its face." 2016-NMSC-035, ¶ 1. In that case, the plaintiff filed suit against the defendant relating to the circumstances surrounding the purchase of two cars. *Id.* ¶ 2. Each of the separate sales contracts allowed either party to compel arbitration of any claim or dispute arising out of the contracts that exceeded the jurisdiction of a small claims court, which was $10,000 at the time. *Id.* ¶ 3. In response to the defendant's motion to compel arbitration, the plaintiff argued that the small claims exception was substantively unconscionable because the defendant was substantially more likely to bring a small claim. *Id.* ¶¶ 17-18. Both the district court and this Court agreed with the plaintiff. *Id.* ¶ 5. Our Supreme Court reversed, reasoning that the small claims exception did not "unambiguously benefit the drafting party alone[.]" *Id.* ¶ 20. The Court acknowledged the defendant's argument that there were " 'legitimate, neutral reasons' for the parties to exclude small claims actions from arbitration, including

14

streamlined pretrial and discovery rules[.]" *Id.* ¶ 21. The Court concluded that the small claims exception was not unfair, even if the drafting party was substantially more likely to bring a small claim, because "[b]oth parties benefit from the economy and efficiency of a small claims court[.]" *Id.* ¶ 22.

{20}     Defendants contend that the *Dalton* analysis compels the conclusion that it is reasonable and fair to exclude the collections dispute exemption at issue in this case from arbitration. We disagree. As an initial matter, contrary to Defendants' assertion, *Dalton* did not hold that the party seeking to enforce an arbitration agreement need only show "that there is a legitimate reason for the exception." Nor do we agree that the rationale allowing the small claims exception in *Dalton* applies to the collections and discharge exceptions here. As we have noted above, the small claims exception in *Dalton* allows both parties complete access to small claims proceedings and the exception benefits both sides by allowing each to take advantage of the economy and efficiency of a small claims court compared to arbitration. Here, on the other hand, Defendants are the most likely to bring collection actions and to be exempted from arbitration while forcing "claims for negligent care or any other claims of inadequate care"—claims the resident is most likely to bring—into arbitration. *See Figueroa*, 2013-NMCA-077, ¶ 31 ("Common sense dictates that the most likely claims [the d]efendant would have against a resident would be related to its provision of services to that resident: i.e., the

15

collection of fees for services[.]); *Ruppelt*, 2013-NMCA-014, ¶ 15 ("Common sense dictates that claims relating to collection of fees . . . are the types of remedies that a nursing home, not its resident, is most likely to pursue."). Thus, Defendants reliance on *Dalton* is misplaced. The agreement in this case is realistically for the sole benefit of Defendants. The collections exception is for a claim most likely to be pursued by Defendants, and they have failed to provide sufficient evidence to prove that the exception is not unreasonably or unfairly one-sided. Accordingly, we affirm the district court's ruling that the arbitration agreement is unconscionable and unenforceable.

**New Mexico's Substantive Unconscionability Doctrine Is Not Preempted by Federal Law**

{**21**}     Under the FAA, an arbitration agreement may be struck down as unenforceable where "grounds . . . exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Agreements to arbitrate may accordingly 'be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability.' " *Rivera*, 2011-NMSC-033, ¶ 17 (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010)). "But states cannot invalidate arbitration agreements through the application of 'defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.' " *Id.* ¶ 17 (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). Our Supreme Court has repeatedly held that New Mexico courts may invalidate

16

arbitration agreements through the doctrine of substantive unconscionability without violating the FAA. *See Cordova*, 2009-NMSC-021, ¶ 38 ("Our unconscionability analysis, which is applied in the same manner to arbitration clauses as to any other clauses of a contract, is therefore not inconsistent with the dictates of the FAA."); *see also Rivera*, 2011-NMSC-033, ¶ 17 ("Despite the policy favoring enforcement of arbitration agreements, under the FAA an arbitration agreement is not enforceable where grounds exist at law or in equity for the revocation of any contract." (internal quotation marks and citation omitted)); *Fiser v. Dell Computer Corp.*, 2008-NMSC-046, ¶ 23, 144 N.M. 464, 188 P.3d 1215 ("While the FAA prevents states from singling out arbitration provisions for suspect status, it does not give arbitration provisions special protection either.").

{22}     Nevertheless, Defendants contend that a recent Tenth Circuit Court of Appeals decision, *THI of New Mexico at Hobbs Center, LLC v. Patton*, 741 F.3d 1162, 1169 (10th Cir. 2014), compels us to readdress the issue of preemption. In *Patton*, the Tenth Circuit held that our state courts were applying the unconscionability doctrine based on an impermissible "perceived inferiority of arbitration to litigation as a means of vindicating one's rights." *Id.* Defendants argue that our state courts must follow the Tenth Circuit on matters of preemption and that we are not foreclosed from reversing the district court's decision to the

17

contrary because our Supreme Court has not addressed the merits of the *Patton* decision. We disagree.

**{23}** While our Supreme Court has not yet addressed the possible preemption of our substantive unconscionability doctrine in light of *Patton*, "[a]ppeals in this Court are governed by the decisions of the New Mexico Supreme Court—including decisions involving federal law, and 'even when a United States Supreme Court decision seems contra.' " *Dalton v. Santander Consumer USA, Inc.*, 2015-NMCA-030, ¶ 30, 345 P.3d 1086 (quoting *State v. Manzanares*, 1983-NMSC-102, ¶ 3, 100 N.M. 621, 674 P.2d 511), *rev'd on other grounds*, *Dalton*, 2016-NMSC-035, ¶ 24. Therefore, we view our Supreme Court's decisions in *Cordova* and its progeny as binding precedent that the district court correctly followed. Accordingly, we conclude that the district court did not err in rejecting Defendants' argument that our unconscionability doctrine is preempted under the FAA in light of *Patton*.

**CONCLUSION**

**{24}** For the foregoing reasons, we affirm the district court's ruling that the arbitration agreement was substantively unconscionable despite Defendants' evidence. Further, we affirm the district court that our unconscionability doctrine is not preempted in light of controlling New Mexico Supreme Court precedent.

**{25}** **IT IS SO ORDERED.**

18

_____

**LINDA M. VANZI, Chief Judge**

**I CONCUR:**

_____

**J. MILES HANISEE, Judge**

**KIEHNE, Judge (dissenting).**

19

**KIEHNE, Judge (dissenting).**

{26}    I agree with the majority that the question we are called on to resolve is "whether Defendants presented sufficient evidence to show why . . . the collections exclusion was not unfairly one-sided and was justified." Majority Op. ¶ 15. I disagree, however, with its conclusion that Defendants failed to present sufficient evidence. As the majority correctly acknowledges, the evidence was that the Facility's accounts receivables were typically below $10,000 per resident, and neither the Facility nor a collection agency acting on its behalf had ever filed a collection lawsuit in any court. Majority Op. ¶ 16. The majority then states that the Facility never informed residents that it would not file a collections lawsuit. *Id.* Finally, the majority rejects the Facility's argument that the exception for collections claims is justifiable because arbitrating such claims is not cost-effective, on the ground that the Facility failed to present evidence of the cost of hiring the arbitrators. *Id.*

{27}    With respect to the first ground for rejecting Defendants' claim—i.e. that Defendants did not inform any resident that they would not file a collections lawsuit—neither Plaintiff, nor the district court, nor the majority has cited any authority for the proposition that this fact matters to our analysis, and I am aware of none. Thus, this fact appears to play no role in the analysis and should be regarded as irrelevant.

20

{28} As for the second ground—i.e. the lack of evidence—I believe the majority has taken an overly narrow view of the evidence. As discussed above, the evidence was that accounts receivable were typically between $1 and $10,000 per resident, and neither the Facility nor any collections agency had ever filed a collections lawsuit in any court. Ms. Correa testified that the Facility had not filed any collections lawsuits because it concluded that doing so would not be cost-effective, explaining that the Facility had once paid a lawyer to conduct an asset search to help determine whether a lawsuit would be worthwhile, and the cost for that service alone had been $7,000. Additionally, the arbitration agreement required that in the event of a dispute, the parties would proceed first to mediation (before a mediator whose fee would be paid by the Facility) and, if that were unsuccessful, to arbitration before a panel of three arbitrators (whose fees would, again, be paid by the Facility). Ms. Correa thus explained that the cost of arbitrating these disputes would also not be cost-effective, since the Facility would not only be paying for its own attorney's fees, but also the additional fees to hire a mediator and three arbitrators.

{29} Although it is true, as the majority states, that the Facility did not present evidence to quantify the amount of the mediator's and arbitrators' fees that would be incurred, it is hard to see why that matters. Here the evidence—which no one disputes—was that the Facility believed it was not cost-effective to file collections

21

lawsuits in court, where it would only have to pay its own attorney, and in fact had never done so. Given these facts, the cost of paying a mediator and three arbitrators, regardless of the amount, would necessarily make arbitration even less cost-effective than proceeding in court. Thus, the Facility's failure to put a specific dollar figure on those fees is not a defect at all, much less a fatal one.

{30} Our Supreme Court and this Court have previously stated that in analyzing an arbitration agreement that excepts certain claims from its scope, we are not to focus on theoretical possibilities. Instead, we look at the agreement's "practical effect," meaning that we determine whether the agreement unfairly preserves a business's ability to bring in court its most likely claims against a consumer while requiring consumers to bring their most likely claims in arbitration. *See, e.g.*, *Cordova*, 2009-NMSC-021, ¶ 1 (holding that arbitration agreement was unconscionable where it preserved for a lender the option of proceeding in court on "all remedies the lender [was] *most likely to pursue* against a borrower" (emphasis added)); *see also Dalton*, 2016-NMSC-035, ¶ 8 ("Substantive unconscionability requires courts to examine the terms on the face of the contract and to consider *the practical consequences* of those terms." (emphasis added)); *Ruppelt*, 2013-NMCA-014, ¶ 16 (rejecting business's argument that exception for collections claims from arbitration agreement was conscionable because it was bilateral; situations where consumers might have such claims were "rare" and thus did not detract from the

22

"practical reality" that the arbitration agreement allowed the business to bring its most likely claims in court while forcing consumers to bring their most likely claims in arbitration).

{31} Under the facts of this case, I do not see how the exception for collections claims rendered the arbitration agreement unconscionable. The "practical effect" of the exception was null, since the Facility had never brought any such claims, nor was it likely to do so. I would therefore reverse and remand for enforcement of the arbitration agreement. Because I would resolve the case on these grounds, I do not believe it is necessary to decide the federal preemption issue. My colleagues being of a different view, I respectfully dissent.

_____
**EMIL J. KIEHNE, Judge**