# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2020-NMSC-010

Filing Date: April 6, 2020

No. S-1-SC-37370

BEVERLY PEAVY, Deceased, by
THE PERSONAL REPRESENTATIVE
OF THE WRONGFUL DEATH ESTATE,
KEITH PEAVY,

 Plaintiff-Respondent,

v.

SKILLED HEALTHCARE GROUP,
INC., SKILLED HEALTHCARE, LLC,
THE REHABILITATION CENTER OF
ALBUQUERQUE, LLC, and
PATRICIA WALKER, LPN,

 Defendants-Petitioners.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Denise Barela-Shepherd, District Judge**

Released for Publication September 8, 2020.

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Jocelyn C. Drennan
Sandra L. Beerle
Albuquerque, NM

for Petitioners

Pitman, Kalkhoff, Sicula & Dentice, S.C.
Jeffrey Alan Pitman
Milwaukee, WI
Feliz Angelica Rael
Albuquerque, NM

for Respondent

UNM School of Law
Michael B. Browde
David J. Stout
Albuquerque, NM

Treinen Law Office PC
Rob Treinen
Albuquerque, NM

for Amici Curiae
New Mexico Trial Lawyers Association and
American Association for Justice

**OPINION**

**BACON, Justice.**

**{1}** This appeal concerns the substantive conscionability of an arbitration agreement that exempts a nursing home's likeliest claim from arbitration, but requires its residents to arbitrate their likeliest claims. We are presented with the question of what analysis a court should follow when a party seeks to make an evidentiary showing that an arbitration agreement with a facially one-sided provision—e.g., exclusion of a party's likeliest claim from mandatory arbitration—is not unconscionable because it is reasonable and fair to except such a claim from arbitration.

**{2}** In 2012, the estate of Beverly Peavy filed a wrongful death lawsuit against several defendants, including The Rehabilitation Center of Albuquerque, LLC (Facility), a skilled nursing facility where Ms. Peavy was a resident. In response, the Facility filed a motion to compel arbitration, citing an arbitration agreement (Agreement) that was attendant to Ms. Peavy's admission agreement to the facility. After a two-day evidentiary hearing, the district court concluded that the Agreement was substantively unconscionable because it forced residents to arbitrate their most likely and most important claims, but allowed the Facility to litigate its most likely claims. This appeal followed and our Court of Appeals affirmed the district court's ruling in a memorandum opinion. *See Peavy v. Skilled Healthcare Grp., Inc.*, A-1-CA-35494, mem op. ¶ 24 (N.M. Ct. App. Oct. 22, 2018) (non-precedential).

**{3}** Concluding that insufficient evidence was presented to justify the one-sidedness of the Agreement, we affirm the district court's order denying the motion to compel arbitration.

## I. FACTS AND PROCEEDINGS

**{4}** Ms. Peavy was a resident of the Facility from 2007 until her death in 2010. Ms. Peavy's son, Plaintiff Keith Peavy, admitted Ms. Peavy to the Facility. Ms. Peavy's admission included Plaintiff entering into a seventy-eight page admission agreement on his mother's behalf. The admission agreement included the Agreement currently at

issue.  Under the Agreement, the parties would first attempt to mediate a claim, then, if necessary, arbitrate the claim before a panel of three arbitrators.  The Facility would pay mediators' and arbitrators' fees, and each side would bear their own attorneys' fees.

**{5}**     The Agreement specified that:

> By signing this Arbitration Agreement, the Facility and the Resident relinquish their right to have any and all disputes associated with this Arbitration Agreement and the relationship created by the Admission Agreement and/or the provision of services under the Admission Agreement (including, without limitation, class action or similar proceedings; claims for negligent care or any other claims of inadequate care provide [sic] by the Facility; claims against the Facility or any of its employees, managers, or members) (each, a "Dispute" and, collectively, the "Disputes"), resolved through a lawsuit, namely by a judge, jury or appellate court, except to the extent that New Mexico law provides for judicial action in arbitration proceedings.

The Agreement, however, provided the following exception: "This Arbitration Agreement shall not apply to either the Facility or the Resident in any disputes pertaining to collections or discharge of residents."

**{6}**     Ms. Peavy died in 2010.  Plaintiff brought a wrongful death lawsuit against the Facility and several other defendants (collectively Defendants) alleging various causes of action arising out of Ms. Peavy's relationship with the Facility.  Relying on the Agreement, Defendants responded by filing a motion to dismiss or, alternatively, stay litigation and compel arbitration.  Opposing arbitration, Plaintiff argued, *inter alia*, that the Agreement was substantively unconscionable and therefore unenforceable.  The thrust of Plaintiff's substantive unconscionability argument was that the Agreement was unconscionable because the exceptions to the Agreement—collections and discharge of residents—were claims most likely to be brought by the Facility, which rendered the Agreement unfairly one-sided.  Defendants requested an evidentiary hearing in part to present evidence showing that the Agreement's collections exception was not unfair or unreasonable.[1]  The district court granted Defendants' request, and held a two-day evidentiary hearing (Hearing) addressing the conscionability of the Agreement.[2]

**{7}**     Regarding substantive conscionability, the sole evidence offered by Defendants at the Hearing was the testimony of Kathy Correa, an administrator at the Facility.  As

---

[1]The Agreement excepts both collections disputes and disputes related to the discharge of residents.  The discharge aspect of the Agreement is not at issue in this case, because federal law and state law require discharge-related issues to be handled in an administrative proceeding, which necessarily exempts such issues from arbitration.  *See* 42 C.F.R. § 483.15 (2017); 8.354.2.10 NMAC (8/1/2014).  The parties agree on this point.  The Agreement's discharge provision is not in controversy and not discussed here.

[2]At the Hearing, the parties put on evidence regarding both the procedural and substantive conscionability of the Agreement.  The district court ultimately found that the Agreement was not procedurally unconscionable.  The district court's finding regarding the procedural conscionability of the Agreement was not appealed and is not an issue before us.

will be discussed herein, Ms. Correa's testimony was not reliable or persuasive. After the Hearing, the district court entered its findings of fact and conclusions of law. The district court found the Agreement to be substantively unconscionable because the Agreement exempted the Facility's likeliest claim, collections disputes, while requiring its residents to arbitrate its likeliest disputes. The district court concluded that, "The evidence presented by [the Facility] as to the application of the Arbitration provision failed to rebut that the practical effect of the Agreement unreasonably favors the [Facility]." The district court further concluded that the Agreement was "ostensibly bilateral on its face" but substantively unconscionable because "it mandates arbitration of Plaintiff's most important and most likely claims while exempting from arbitration the claims most likely to be brought by the [Facility] and, as such, is unfair and unreasonably one-sided." Accordingly, the district court denied Defendants' motion to compel arbitration.

**{8}** Defendants appealed the district court's ruling. In a memorandum opinion, a Court of Appeals majority affirmed the district court's denial of Defendants' motion to compel arbitration. *See Peavy*, A-1-CA-35494, mem op. ¶ 24. The majority held that the Agreement was facially one-sided in that the collections exception was "for a claim most likely to be pursued by Defendants." *Id.* ¶ 20. Additionally, the majority held that Defendants failed to present evidence sufficient to justify the one-sidedness of the Agreement. *Id.* A narrow dissent focused only on the evidence adduced at the Hearing, and argued that the evidence did justify the Agreement's one-sidedness. *See id.* ¶¶ 26-31 (Kiehne, J., dissenting).

## II.    STANDARD OF REVIEW

**{9}** "We apply a de novo standard of review to a district court's denial of a motion to compel arbitration." *Cordova v. World Fin. Corp. of N.M.*, 2009-NMSC-021, ¶ 11, 146 N.M. 256, 208 P.3d 901. Questions regarding substantive unconscionability present questions of law that are also reviewed de novo. *See id.*

## III.    DISCUSSION

## A.    Substantive Unconscionability

**{10}** Unconscionability is an affirmative defense to contract enforcement. *See Strausberg v. Laurel Healthcare Providers, LLC*, 2013-NMSC-032, ¶ 3, 304 P.3d 409. "Unconscionability is an equitable doctrine, rooted in public policy, which allows courts to render unenforceable an agreement that is unreasonably favorable to one party while precluding a meaningful choice of the other party." *Cordova*, 2009-NMSC-021, ¶ 21. The party alleging unconscionability bears the burden of proving that a contract is unenforceable on that basis. *See Strausberg*, 2013-NMSC-032, ¶ 48. The burden of proving unconscionability, however, does not require an evidentiary showing. *See Dalton v. Santander Consumer USA, Inc.*, 2016-NMSC-035, ¶ 7, 385 P.3d 619. In other words, the party bearing the burden of proving unconscionability does not have to make any "particular evidentiary showing," but rather can persuade the factfinder "by analyzing the contract on its face." *Id.* ¶ 8.

**{11}** Unconscionability can be analyzed from both the substantive perspective and the procedural perspective. *See Fiser v. Dell Comput. Corp.*, 2008-NMSC-046, ¶ 20, 144 N.M. 464, 188 P.3d 1215. Although the presence of both forms of unconscionability increases the likelihood of a court invalidating the agreement, there is no requirement that both forms be present. *See id.* ¶ 22 (invalidating an arbitration clause based on substantive unconscionability alone). Procedural unconscionability considers the factual circumstances of a contract's formation. *See Cordova*, 2009-NMSC-021, ¶ 23. "Substantive unconscionability concerns the legality and fairness of the contract terms themselves." *Id.* ¶ 22. "The substantive analysis focuses on such issues as whether the contract terms are commercially reasonable and fair, the purpose and effect of the terms, the one-sidedness of the terms, and other similar public policy concerns." *Id.* Substantively unconscionable contract provisions include provisions that unreasonably benefit one party over another. *See id.*; *see also Padilla v. State Farm Mut. Auto. Ins. Co.*, 2003-NMSC-011, ¶ 14, 133 N.M. 661, 68 P.3d 901 (concluding an arbitration provision was substantively unconscionable because it limited only one party's ability to appeal arbitration awards).

**{12}** Arbitration agreements are a species of contract subject to generally applicable contract law, including unconscionability. *See Horne v. Los Alamos Nat'l Sec., L.L.C.*, 2013-NMSC-004, ¶ 16, 296 P.3d 478; *see also Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996) (acknowledging that states may invalidate arbitration agreements based on generally applicable state contract law). Arbitration agreements are substantively unconscionable when they are unfairly and unreasonably one-sided. *See Cordova*, 2009-NMSC-021, ¶ 32 (stating that "settled standards of New Mexico unconscionability law" render unfairly and unreasonably one-sided arbitration agreements substantively unconscionable). New Mexico conscionability case law has consistently found arbitration agreements to be unfairly and unreasonably one-sided when they unjustifiably require the non-drafting party to arbitrate its likeliest claims, while allowing the drafting party to pursue its likeliest claims through litigation. *See, e.g., Rivera v. Am. Gen. Fin. Servs., Inc.*, 2011-NMSC-033, ¶¶ 53-54, 150 N.M. 398, 259 P.3d 803; *Cordova*, 2009-NMSC-021, ¶ 32; *Padilla*, 2003-NMSC-011, ¶¶ 10, 14; *Bargman v. Skilled Healthcare Grp., Inc.*, 2013-NMCA-006, ¶¶ 20-21, 292 P.3d 1; *Ruppelt v. Laurel Healthcare Providers, LLC*, 2013-NMCA-014, ¶ 1, 293 P.3d 902; *Figueroa v. THI of N.M. at Casa Arena Blanca, LLC*, 2013-NMCA-077, ¶ 30, 306 P.3d 480.

**{13}** Despite this consistency, "[n]othing in these cases expressly lays down a bright-line, inflexible rule that excepting from arbitration any claim most likely to be pursued by the defendant drafter will void the arbitration clause as substantively unconscionable. . . . [C]ases should still be examined on a case-by-case basis." *Bargman*, 2013-NMCA-006, ¶ 17. A one-sided arbitration agreement is not substantively unconscionable merely by way of its one-sidedness. Rather, our substantive unconscionability law requires a determination that the one-sidedness of an arbitration agreement is unfair and unreasonable. *See Dalton*, 2016-NMSC-035, ¶ 21 ("Gross unfairness is a bedrock principle of our unconscionability analysis."); *Cordova*, 2009-NMSC-021, ¶ 32 (concluding an arbitration agreement was substantively unconscionable because it was unreasonably and unfairly one-sided).

**B.     The Substantive Unconscionability Analysis**

**{14}**    We address Defendants' arguments that the district court and Court of Appeals applied the wrong analytical standard in concluding that the Agreement was substantively unconscionable.  We conclude that the lower courts applied the correct analysis, and we take this opportunity to clarify the analysis a district court should engage in when analyzing the substantive unconscionability of an arbitration agreement.

**1.     The lower courts applied the correct analysis**

**{15}**    According to Defendants, New Mexico conscionability case law sets forth the possibility that a defendant may present evidence showing that an arbitration exception is reasonable and fair despite that exception's facial one-sidedness—that the arbitration exception is one-sided, but justifiably fair and reasonable in light of the evidence presented.  Defendants rely on *Bargman*, 2013-NMCA-006, for this proposition. Defendants contend there is a contrasting analytical approach, derived from *Ruppelt*, 2013-NMCA-014, that holds that a defendant may present evidence rebutting the presumption of an arbitration agreement's one-sidedness.  The distinction between these two proposed approaches hinges on what the evidence must show: that an arbitration agreement's one-sidedness is justified because it is reasonable and fair, or that an arbitration agreement is not actually one-sided.  Defendants argue that both the district court and Court of Appeals applied the *Ruppelt* approach, instead of the *Bargman* approach, which was in error because Defendants presented evidence to show the reasonableness and fairness of the Agreement, not to rebut the presumed one-sidedness of the Agreement.

**{16}**    To begin, we reject Defendants' argument that *Ruppelt* sets forth any discernable analytical standard.  *Ruppelt*'s conscionability focus was whether the arbitration agreement in that case was facially one-sided.  2013-NMCA-014, ¶¶ 10-15.  *Ruppelt* acknowledged the possibility that evidence could be offered in determining the conscionability of an arbitration agreement, but did not offer any analytical guidance because the defendants in that case expressly declined the Court of Appeals' suggestion to remand the case for further evidentiary development. *Id.* ¶ 17.

**{17}**    We do, however, agree that *Bargman* contemplates that a defendant drafter may present evidence justifying the facial one-sidedness of an arbitration agreement.  In *Bargman*, our Court of Appeals was confronted with the substantive unconscionability of an arbitration agreement contained in a defendant nursing home's admission agreement.  2013-NMCA-006, ¶ 1.  That arbitration agreement exempted from arbitration disputes pertaining to collections. *Id.* ¶ 4.  In evaluating this exception, the Court of Appeals stated that New Mexico conscionability case law does not "lay[] down a bright-line, inflexible rule that excepting from arbitration any claim most likely to be pursued by the defendant drafter will void the arbitration clause as substantively unconscionable. . . . [C]ases should still be examined on a case-by-case basis." *Id.* ¶ 17.  Applying this case-by-case approach, the *Bargman* court determined the arbitration agreement was facially one-sided, but remanded the case to the district court so that

the defendant nursing home could present evidence "tending to show that the collections exclusion [was] not unreasonably or unfairly one-sided such that enforcement of it [would be] substantively unconscionable." *Id.* ¶ 24.

**{18}** *Bargman* aptly pointed out that no New Mexico case has proposed a "bright-line, inflexible rule" that excepting a defendant drafter's most likely claim from arbitration necessarily renders an arbitration agreement unconscionable. *Id.* ¶ 17. Instead, New Mexico conscionability cases establish that an arbitration agreement is substantively unconscionable if its exemptions are unreasonably and unfairly one-sided. *See, e.g.*, *Dalton*, 2016-NMSC-035, ¶ 21 ("We are not persuaded that allowing both parties in this case complete access to small claims proceedings, even if one party is substantially more likely to bring small claims actions, is at all *unfair*." (emphasis added)); *Rivera*, 2011-NMSC-033, ¶ 54 (holding an arbitration agreement was unconscionable because it was unfairly one-sided); *Cordova*, 2009-NMSC-021, ¶ 32 (concluding that a loan company's "arbitration scheme it imposed on its borrowers [was] *so unfairly and unreasonably one-sided* that it [was] substantively unconscionable" (emphasis added)); *Figueroa*, 2013-NMCA-077, ¶ 30 ("[W]e refuse to enforce an agreement where the drafter *unreasonably* reserved the vast majority of his claims for the courts, while subjecting the weaker party to arbitration on essentially all of the claims that party is likely to bring." (emphasis added)). Indeed, under New Mexico law, unfair and unreasonable one-sidedness renders a contract substantively unconscionable. *See, e.g.*, *Dalton*, 2016-NMSC-035, ¶ 21 ("Gross unfairness is a bedrock principle of our unconscionability analysis."); *State ex rel. King v. B&B Inv. Grp., Inc.*, 2014-NMSC-024, ¶ 32, 329 P.3d 658 (holding signature loan contracts were substantively unconscionable because of their unfair and unreasonable interest rates).

**{19}** While no bright-line rule exists, New Mexico cases have consistently found arbitration agreements to be one-sided when the agreements exclude the drafting party's likeliest claims from arbitration while subjecting the non-drafting party's likeliest claims to arbitration. *See, e.g.*, *Rivera*, 2011-NMSC-033, ¶ 54; *Cordova*, 2009-NMSC-021, ¶ 32; *Ruppelt*, 2013-NMCA-014, ¶ 18; *Figueroa*, 2013-NMCA-077, ¶ 30. These cases have focused on the facial one-sidedness of the arbitration agreements that is readily apparent from analyzing the language of the agreements. Evidence was not considered in any of these cases to show that the arbitration exceptions were not unreasonable or unfair. We conclude that under New Mexico conscionability law a presumption of unfair and unreasonable one-sidedness arises when a drafting party excludes its likeliest claims from arbitration, while mandating the other party arbitrate its likeliest claims. This presumption stems from the lack of mutuality that correlates with overly one-sided contracts. *See, e.g.*, *New v. GameStop, Inc.*, 753 S.E.2d 62, 77 (W. Va. 2013) (recognizing that "in assessing substantive unconscionability, the paramount consideration is mutuality" (alteration, internal quotation marks, and citation omitted)); *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 692 (Cal. 2000) (finding an arbitration agreement substantively unconscionable because the agreement's one-sidedness created a lack of mutuality); *Iwen v. U.S. W. Direct*, 1999 MT 63, ¶ 32, 977 P.2d 989 (concluding an arbitration agreement lacked mutuality, and contained unreasonably one-sided arbitration exceptions), *superseded on other grounds by Tedesco v. Home Sav. Bancorp, Inc.*, 2017 MT 304, ¶ 22, 407 P.3d 289.

We emphasize, however, that this presumption may be overcome by an evidentiary showing that justifies the one-sidedness of the arbitration agreement. In other words, a defendant drafter may offer evidence showing that an arbitration agreement's exceptions are reasonable and fair, such that enforcement of the agreement is not substantively unconscionable. *See Bargman*, 2013-NMCA-006, ¶ 24.

**{20}** With this reasoning, we clarify the two-step analysis a court should apply when confronted with the substantive conscionability of an arbitration agreement.[3] First, the court should analyze the arbitration agreement on its face. The court should look to the face of the arbitration agreement "to determine the 'legality and fairness of the contract terms themselves.'" *Dalton*, 2016-NMSC-035, ¶ 8 (quoting *Cordova*, 2009-NMSC-021, ¶ 22). As noted above, an arbitration agreement is facially one-sided when it excludes the drafting party's likeliest claim from arbitration, but requires the non-drafting party to arbitrate its likeliest claims.

**{21}** Second, if the court determines the arbitration agreement is facially one-sided, the court should allow the drafting party to present evidence that justifies the agreement is fair and reasonable, such that enforcement of the agreement would not be substantively unconscionable. *See Bargman*, 2013-NMCA-006, ¶ 24. The evidence need not show that the agreement is not one-sided, but rather must justify that the agreement's exceptions are fair and reasonable. *See Dalton*, 2016-NMSC-035, ¶ 21 (emphasizing that fairness is the key consideration in the unconscionability analysis); *Cordova*, 2009-NMSC-021, ¶ 22 ("The substantive analysis focuses on such issues as whether the contract terms are commercially reasonable and fair[.]").

**{22}** In the case at bar, both the Court of Appeals and the district court engaged in an analysis consistent with the approach clarified above. At the district court level, the court began its substantive unconscionability analysis by concluding that, on its face, the Agreement was one-sided because it exempted the Facility's likeliest claim, but required its residents to arbitrate their claims. Next, the district court concluded that Defendants had failed to present evidence justifying the one-sidedness of the Agreement. These two conclusions by the district court demonstrated that it 1) analyzed the Agreement on its face, and 2) considered evidence of whether the Agreement's one-sided exceptions were justified. Our Court of Appeals likewise engaged in the two-part analysis by first determining that the Agreement was facially one-sided, and then by next addressing "whether Defendants presented sufficient evidence to show why . . . the collections exclusion was not unfairly one-sided and was justified." *Peavy*, A-1-CA-35494, mem op. ¶ 15.

## 2. Defendants misapply *Dalton*

**{23}** We reject Defendants' attempt to draw analytical support from our opinion in *Dalton*. *Dalton* is decidedly distinguishable from the case at hand. In *Dalton*, this Court

---

[3]Our decision today does not alter our holdings in *Strausberg*, 2013-NMSC-032. Under *Strausberg*, the party raising the affirmative defense of substantive unconscionability has the initial burden of persuading the factfinder that the contract should not be enforced on that basis. *Id.* ¶ 48.

confronted an arbitration agreement that allowed either party to compel arbitration for *any* claim that exceeded the jurisdiction of small claims court ($10,000). 2016-NMSC-035, ¶ 1. This Court found that such an agreement was not "at all unfair," even considering that the drafting party was "substantially more likely to bring small claims actions[.]" *Id.* ¶ 21. Our decision in *Dalton* was heavily grounded in the fact that the arbitration agreement in that case exempted any claim—not just specific claims—from mandatory arbitration as long as that claim did not exceed $10,000. *Id.* ¶ 22. Moreover, *Dalton* pointed out the fairness of this $10,000 threshold, because it bilaterally allowed either party to avail itself of the benefits, economy, and efficiency of small claims court. *Id.* In the instant case, only a specific claim—the Facility's likeliest—is exempted from arbitration. Additionally, unlike *Dalton*, no language exists in the Agreement that limits the extent of the Agreement's exceptions.

**{24}** We disagree with Defendants that *Dalton* marks an analytical departure from New Mexico conscionability case law. *Dalton* reaffirmed, rather than departed from, existing substantive conscionability case law. *Dalton* did so by illustrating that a court should first look to an arbitration agreement on its face to determine if the agreement benefits the drafting party in a one-sided manner. *See id.* ¶ 8; *accord Rivera*, 2011-NMSC-033, ¶¶ 53-54 (determining an arbitration agreement was substantively unconscionable because it unreasonably benefited the drafting party by excluding its likeliest claims from mandatory arbitration); *Cordova*, 2009-NMSC-021, ¶ 25 ("Contract provisions that unreasonably benefit one party over another are substantively unconscionable."). The *Dalton* Court was not tasked with considering evidence to justify a one-sided arbitration agreement. Nor was it necessary for the Court to consider evidence of justification, because the Court concluded that the arbitration agreement in that case was unambiguously beneficial to both parties. In other words, the *Dalton* Court did not have to consider evidence to justify the arbitration agreement's "practical consequences" because the benefits to both parties to the agreement were facially apparent. *See* 2016-NMSC-035, ¶¶ 22-23. Evidence was not presented in *Dalton* because the arbitration agreement in that case was not one-sided. In light of the differences in the language of the arbitration agreement in *Dalton* and the Agreement in the case at bar, we fail to see what guidance *Dalton* offers to the case before us.

## C.     The Agreement is Substantively Unconscionable

**{25}** Having clarified the conscionability analysis to be applied to arbitration agreements, we turn now to the Agreement before us. We hold the Agreement is facially one-sided in that it excludes the Facility's likeliest claim from mandatory arbitration, but requires its residents to arbitrate their likeliest claims. We conclude that Defendants did not justify this one-sidedness because they did not present evidence showing that the Agreement's collections exception was reasonable and fair. We therefore hold that the Agreement is substantively unconscionable.

### 1.     The Agreement is facially one-sided

**{26}** As set forth above, we begin by analyzing the Agreement on its face. Our Court of Appeals has confronted arbitration agreements with the exact same language as the

Agreement currently before us. In those cases our Court of Appeals found the language of the arbitration agreement to be one-sided. *See Bargman*, 2013-NMCA-006, ¶¶ 1, 4; *Ruppelt*, 2013-NMCA-014, ¶¶ 1, 3; *see also Figueroa*, 2013-NMCA-077, ¶ 28 (addressing similar language to the Agreement). We see no reason to disagree here. Relying on this established case law, we hold that the Agreement is one-sided on its face because it exempts the Facility's likeliest claim, but requires its residents to arbitrate their likeliest claims. We now turn to whether evidence presented at the district court justified the one-sidedness of the Agreement as fair and reasonable.

**2.     Defendants failed to justify the one-sidedness of the Agreement because the evidence did not show that the Agreement's collections exception was fair and reasonable**

**{27}**     The district court specifically held the Hearing to address the conscionability of the Agreement, including determining whether the Agreement's one-sidedness was fair and reasonable. Defendants presented the testimony of Ms. Correa at the Hearing in order to show the Agreement's exceptions were fair and reasonable. Ms. Correa's duties at the Facility included ensuring the Facility complied with its internal policies and procedures, monitoring the Facility's accounts receivable, and pursuing informal collection efforts if needed. Ms. Correa detailed the Facility's collections policy, which included "aggressive collection efforts," such as sending letters to residents threatening legal action, and ultimately allowed for the Facility to sue a resident. Ms. Correa further testified that: 1) in her experience the Facility had never sued a resident for a collections claim despite Facility policy and the Agreement allowing for such action; 2) the range of debt owed by a resident typically ranged from $1-$10,000, but in her experience the debt could exceed $10,000, even getting as high as $76,000; 3) she believed that it was not in the Facility's best interest to sue residents over debts less than $10,000 because she believed it was not cost-effective; and 4) in her estimate the costs of arbitrating a collections claim under the Agreement's arbitration scheme was not financially feasible due to the typically lower sums involved in resident collections actions. This evidence was not disputed.

**{28}**     Defendants maintain that this evidence sufficiently shows that arbitrating collections claims would be cost-prohibitive, such that it is fair and reasonable to except those claims under the Agreement. We disagree. Ms. Correa's testimony failed to quantify the costs associated with hiring arbitrators. Ms. Correa merely speculated as to the costs of arbitrating and litigating a collections action. Defendants could have, but did not, present evidence showing that the costs associated with arbitrating collections disputes were so cost-prohibitive that they warranted exception from arbitration. Even assuming *arguendo* that it is fair and reasonable to avoid arbitrating collections claims because they involve lower sums of money, the Agreement would still fail because that same rationale would apply to any low-value claim, not just collections claims. *Cf. Dalton*, 2016-NMSC-035, ¶ 22 (concluding that an arbitration agreement was fair and reasonable because it excepted any claim under $10,000 from arbitration, thus avoiding the costs of arbitration for any claim involving lower sums of money). For example, if a resident had a breach of contract action against the Facility alleging damages under $10,000, the claim would be arbitrated and the Facility would bear the very same costs

that Defendants deem prohibitive in collections actions.  The evidence fails to justify why only collections actions, as opposed to any low-value claim, are excepted from the Agreement.

**{29}**   We are unpersuaded that Ms. Correa's testimony established that the Facility would not sue a resident in a collections action unless it was financially feasible to do so.  We note that Ms. Correa lacked any capacity to speak on behalf of the Facility.  At the Hearing, she was not tendered as a witness under Rule 1-030(B)(6) NMRA, and to the extent she could speak about the Facility's policy, she clarified that the information she offered was her own "personal philosophy."  Moreover, Ms. Correa's testimony fails to indicate at what monetary threshold the Facility would pursue a collections claim.  The benefits of arbitration would certainly avail themselves when collections claims have higher value.  High-value collections claims were not an unrealistic possibility to the Facility; Ms. Correa testified that it was not uncommon for a resident's debt to exceed $10,000, and she personally knew of one resident whose debt was well over $75,000.  Defendants failed to present evidence justifying why it would be reasonable and fair to except high-value collections claims from arbitration.  Indeed, if we allowed the Facility to unjustifiably circumvent arbitrating high-value collection claims, we would be upholding a contract that disfavors arbitration.  Such an action by this Court would be in conflict with our State's strong public policy favoring resolution of disputes through arbitration.  *See Horne*, 2013-NMSC-004, ¶ 16.

**{30}**   Finally, we address the Court of Appeals' dissent.  In the dissent's view, evidence presented by Defendants did justify the Agreement's collections exception. *See Peavy*, A-1-CA-35494, mem op. ¶ 31 (Kiehne, J., dissenting).  According to the dissent, the "'practical effect' of the exception was null, since the Facility had never brought [a collections claim against a resident], nor was it likely to do so." *Id.*  This reasoning is unavailing.  The practical effect of the Agreement was to exclude the Facility's likeliest claim from arbitration. *See Bargman*, 2013-NMCA-006, ¶ 19; *Ruppelt*, 2013-NMCA-014, ¶ 15.  Defendants were afforded the opportunity to present evidence justifying the Agreement's collections exception as reasonable and fair, but failed to do so.  Moreover, although the Facility had not sued a resident in a collections action, that offers little import as to why the exception existed within the Agreement at all, or how that fact would indicate that the Facility would not sue a resident in the future.  As the Court of Appeals' majority pointed out, "we consider the mere fact that thus far it is too expensive for a facility to pursue [a collections claim] to be little assurance that one day it will not be." *Peavy*, A-1-CA-35494, mem. op. ¶ 17.

## IV.   CONCLUSION

**{31}**   Defendants failed to present evidence justifying the one-sidedness of the Agreement as fair and reasonable.  Without this justification the Agreement is substantively unconscionable.  For these reasons, and reasons discussed above, we affirm the district court's order denying the motion to compel arbitration.  We remand this matter to the district court for further proceedings consistent with this opinion.

**{32}   IT IS SO ORDERED.**

**C. SHANNON BACON, Justice**

**WE CONCUR:**

**JUDITH K. NAKAMURA, Chief Justice**

**BARBARA J. VIGIL, Justice**

**DAVID K. THOMSON, Justice**

**JAROD K. HOFACKET, Judge**
**Sitting by designation**