This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38547**

**NORMA GOMEZ, as Attorney-in-Fact**
**of VIRGINIA GARZA,**

Plaintiff-Appellee,

v.

**HOBBS OPERATING COMPANY, LLC**
**d/b/a HOBBS HEALTHCARE CENTER;**
**SWC NEW MEXICO HOLDCO, LLC;**
**SWC EQUITY HOLDINGS, LLC; SWC**
**EQUITY HOLDINGS PARENT HOLDCO,**
**LLC; SAVASENIORCARE, LLC; PROTO**
**EQUITY HOLDINGS, LLC; TERPAX, INC.;**
**SAVASENIORCARE ADMINISTRATIVE**
**SERVICES, LLC; SAVASENIORCARE**
**CONSULTING, LLC; SSC DISBURSEMENT**
**COMPANY, LLC; and THOMAS FORSBERG,**
**in his capacity as Administrator of Hobbs**
**Healthcare Center,**

Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**Michael H. Stone, District Judge**

Ron Bell Injury Lawyers
Lee L. Coleman
Albuquerque, NM

Reddick Moss, PLLC
Brian D. Reddick
Brent L. Moss
Robert W. Francis
Little Rock, AR

for Appellee

Gordon Rees Scully Mansukhani, LLP
Christopher R. Jones
Thomas Quinn
Jaime L. Wiesenfeld
Denver, CO

for Appellants

## MEMORANDUM OPINION

**MEDINA, Judge.**

**{1}**    Hobbs Operating Company, LLC, d/b/a Hobbs Health Care Center, (Defendant) appeals the denial of its motion to compel arbitration. Defendant raises a number of issues on appeal. For the reasons that follow, we reverse.

## BACKGROUND

**{2}**    Virginia Garza was admitted to the Hobbs Healthcare Center (HHC), a nursing home located in Hobbs, New Mexico, on April 13, 2017, for rehabilitation after a long hospitalization. She remained at HHC until April 27, 2017. Prior to her residency, Garza's son signed an admission agreement, an arbitration agreement, and various other documents. The arbitration agreement specifies that:

> BY AGREEING TO HAVE ALL DISAGREEMENTS RESOLVED
> THROUGH THE DISPUTE RESOLUTION PROGRAM, THE PARTIES
> AGREE TO WAIVE THE RIGHT TO A JUDGE OR A JURY TRIAL AND
> TO HAVE THE DISPUTE RESOLVED THROUGH VARIOUS STEPS,
> CULMINATING IN A DECISION BY AN ARBITRATOR.

The arbitration agreement defines a "dispute" as:

> (a) any claim or dispute totaling $50,000.00 individually or in the
> aggregate that would constitute a cause of action that either party could
> bring in a court of law[;] (b) this agreement does not prevent either party
> from initiating a grievance proceeding, complaint to survey agencies,
> appeal proceedings with the appropriate state or federal entity regarding
> an involuntary transfer or discharge, or any such claim or dispute involving
> solely a monetary claim in an amount less than $50,000.00. Any such
> claim shall not be deemed a dispute under this agreement.

One year after Garza left HHC, her daughter, Norma Gomez (Plaintiff), acting as attorney-in-fact for her mother, filed a complaint in district court, alleging that Garza's health and physical condition deteriorated because of inadequate care and treatment at

HHC. In particular, the complaint alleged that Garza's preexisting coccyx wound developed into bedsores, she developed seven additional pressure wounds, and sustained a large bruise to her right hip area. Plaintiff made separate claims for negligence and violations of the New Mexico Unfair Trade Practices Act by Defendant and a number of other related entities. The complaint sought an unspecified amount of compensatory damages as well as punitive damages.

**{3}**   Defendant filed a motion to compel arbitration and stay proceedings, asserting as relevant to this appeal that the arbitration agreement was not procedurally or substantively unconscionable. Defendant attached three exhibits to its motion: (1) Garza's resident admission agreement; (2) the dispute resolution program document; and (3) various forms including a consent to treatment. Plaintiff filed a response in opposition to Defendant's motion to compel arbitration, arguing, in part, that the agreement lacked mutuality of obligation because its terms excluded Defendant's most likely claims from arbitration while forcing Garza to arbitrate her most likely claims. Plaintiff asserted that the $50,000 arbitration exemption "excluded from arbitration all likely claims [Defendant] would ever have against [Garza], including all collection or billing disputes" while "forcing [Garza's] personal injury claims to be bound to arbitration." Plaintiff did not attach exhibits or any form of documentary evidence in support of the assertions and arguments made in her response to Defendant's motion. In its written reply, Defendant disputed that the arbitration agreement lacked mutuality of obligation because the $50,000 exception applied bilaterally.

**{4}**   Neither party presented evidence during the hearing on the motion to compel arbitration and instead relied on their briefing and legal argument in support of their respective positions. The district court denied Defendant's motion, finding in pertinent part that the agreement was "unenforceable because it is unconscionable."[1] The district court explained its ruling as follows:

> Based on the argument of counsel, case law and the proffered evidence, this [c]ourt believes the "carve[-]out" is realistically for the sole benefit of the facility. Arbitration will realistically be required for only a relatively significant controversy (greater than $50,000.00). Realistically, arbitration will only be applicable for potential malpractice matters, benefitting the facility. The proffered evidence before the [c]ourt is not sufficient to prove that the "carve[-]out" is not unreasonably or unfairly one-sided. The [c]ourt finds the arbitration agreement is unenforceable because it is unconscionable.

**{5}**   This appeal followed.

## DISCUSSION

---

[1]Although Plaintiff argued that the arbitration agreement lacked mutuality, in its order, the district court explained, "It appears from the authority presented by counsel that the analysis in New Mexico is a question of unconscionability and does not focus on lack of mutuality. . . . Therefore, the [c]ourt is required to focus on the conscionability of the arbitration agreement."

**{6}**     On appeal Defendant argues that the district court: (1) improperly shifted the burden of disproving unconscionability to Defendant; (2) failed to weigh procedural fairness of the arbitration agreement; (3) erred in finding that a $50,000 bilateral carve-out was one-sided; and (4) erred in concluding that the likelihood of arbitration of one party's claims, by itself, is unconscionable.

**{7}**     At the outset, it appears that the district court found the arbitration agreement at issue unconscionable solely based on substantive unconscionability. In evaluating Defendant's challenges to the district court's determination of unconscionability, we are aided by our New Mexico Supreme Court's recent decision in *Peavy ex rel. Peavy v. Skilled Healthcare Group, Inc.*, 2020-NMSC-010, 470 P.3d 218, filed after the district court issued the order from which Defendant appeals in this case. In *Peavy*, our Supreme Court clarified the appropriate method to evaluate whether arbitration agreements are substantively unconscionable. We must therefore evaluate this case in light of *Peavy. See generally Aguilera v. Palm Harbor Homes, Inc.*, 2002-NMSC-029, ¶ 6, 132 N.M. 715, 54 P.3d 993 (recognizing that the Court of Appeals is bound by Supreme Court precedent).

**Standard of Review**

**{8}**     "Arbitration agreements are a species of contract, subject to the principles of New Mexico contract law." *L.D. Miller Constr., Inc. v. Kirschenbaum*, 2017-NMCA-030, ¶ 18, 392 P.3d 194. Therefore, "we apply New Mexico contract law in [the] interpretation and construction of the [a]rbitration [a]greement." *Id*. "We apply a de novo standard of review to a district court's denial of a motion to compel arbitration." *Peavy*, 2020-NMSC-010, ¶ 9 (internal quotation marks and citation omitted). "[W]e review whether a contract is unconscionable as a matter of law." *Cordova v. World Fin. Corp. of N.M.*, 2009-NMSC-021, ¶ 11, 146 N.M. 256, 208 P.3d 901.

**The Arbitration Agreement Is Not Substantively Unconscionable**

**{9}**     Under de novo review, and applying *Peavy*, we evaluate whether the terms of the voluntary arbitration agreement are substantively unconscionable. We address Defendant's arguments within our discussion as necessary.

**{10}**    "Unconscionability is an affirmative defense to contract enforcement." *Peavy*, 2020-NMSC-010, ¶ 10. "The party alleging unconscionability bears the burden of proving that a contract is unenforceable on that basis." *Id.* "The burden of proving unconscionability, however, does not require an evidentiary showing." *Id.* "In other words, the party bearing the burden of proving unconscionability does not have to make any particular evidentiary showing, but rather can persuade the factfinder by analyzing the contract on its face." *Id.* (internal quotation marks and citation omitted). "Unconscionability can be analyzed from both the substantive perspective and the procedural perspective." *Id.* ¶ 11. "Although the presence of both forms of unconscionability increases the likelihood of a court invalidating the agreement, there is no requirement that both forms be present." *Id.* (citing *Fiser v. Dell Comput. Corp.*,

2008-NMSC-046, ¶ 22, 144 N.M. 464, 188 P.3d 1215, in which an arbitration clause was invalidated based on substantive unconscionability alone).

**{11}** *Peavy* articulates a two-step analysis used to evaluate substantive unconscionability. *Id.* ¶ 20. First, "[t]he court should look to the face of the arbitration agreement to determine the legality and fairness of the contract terms themselves." *Id.* (internal quotation marks and citation omitted). "Second, if the court determines the arbitration agreement is facially one-sided, the court should allow the drafting party to present evidence that justifies the agreement is fair and reasonable, such that enforcement of the agreement would not be substantively unconscionable." *Id.* ¶ 21. Based on this language, we interpret *Peavy* to hold that the drafting party must present evidence demonstrating a given arbitration agreement is fair and reasonable only upon a showing that the agreement is "facially one-sided." *See id.* Nothing within *Peavy* suggests otherwise. Thus, we begin our evaluation of the arbitration agreement by examining the legality and fairness of its terms on the face of the agreement.

**{12}** In evaluating the terms of the arbitration agreement, the district court found that the $50,000 "carve[-]out" provision "is realistically for the sole benefit of the facility" and that "[a]rbitration will realistically be required for only a relatively significant controversy[.]" Having no evidence other than the arbitration agreement on which to base its finding, the district court appears to have accepted Plaintiff's argument that the $50,000 carve-out specifically excluded from arbitration all of Defendant's likely claims, while relegating Garza's most likely claims to arbitration. Although "the party bearing the burden of proving unconscionability . . . can persuade the factfinder by analyzing the contract on its face," we are unpersuaded that the terms of the arbitration agreement— on their face—here support such a conclusion. *Peavy*, 2020-NMSC-010, ¶ 10 (internal quotation marks and citation omitted). We explain.

**{13}** Rather, the $50,000 threshold for arbitration applies to both parties equally and without reservation, a fact in contrast with other New Mexico cases that have held arbitration agreements to be substantively unconscionable where the terms—on their face—are unfairly or unreasonably one-sided. *See generally id.*; *Cordova*, 2009-NMSC-021, ¶ 32. In each of these cases, one-sided exclusions from arbitration have been explicit and the inequity of the exceptions readily apparent. For example, in *Peavy* the arbitration agreement required the parties to relinquish the right to have *any* and *all* disputes resolved through lawsuit but excluded disputes pertaining to collections or resident discharges—claims unlikely to be brought by a plaintiff against a facility. *Peavy*, 2020-NMSC-010, ¶ 5. Our Supreme Court, citing cases addressing the exact same language, held that the agreement was facially one-sided because it directly exempted the defendant's likeliest claim—collections—but required arbitration of the plaintiff's most likely claims.[2] *Id.* ¶ 26. Similarly, in *Cordova* the agreement at issue broadly

---

[2]In support of its conclusion, the Court in Peavy relied on *Figueroa v. THI of New Mexico at Casa Arena Blanca, LLC*, 2013-NMCA-077, ¶ 31, 306 P.3d 480, which addressed specific exceptions from arbitration for guardianship proceedings, collections, and eviction actions. The Court also cited *Bargman v. Skilled Healthcare Group, Inc.*, 2013-NMCA-006, ¶ 18, 292 P.3d 1, and *Ruppelt v. Laurel Healthcare Providers, LLC*, 2013-NMCA-014, ¶ 18, 293 P.3d 902, which considered similar exceptions.

required parties to arbitrate all disputes arising under the agreement as well as many other claims, including the validity of the agreement itself. 2009-NMSC-021, ¶ 3. However, the agreement also provided that "in the event of a [d]efault . . . , Lender may seek its remedies in an action at law or in equity, including but not limited to, judicial foreclosure or repossession." *Id.* ¶ 4 (internal quotation marks omitted). Based on these exclusions, our Supreme Court concluded that the defendant's "self-serving arbitration scheme . . . imposed on its borrowers is so unfairly and unreasonably one-sided that it is substantively unconscionable." *Id.* ¶ 32.

**{14}** Unlike the agreements in *Peavy* or *Cordova*, the arbitration agreement in this case does not carve out specific claims—such as for collections or resident discharges—but instead establishes a $50,000 exception to arbitration, applicable to both parties.[3] Our Supreme Court addressed a similar bilateral arbitration exception in *Dalton v. Santander Consumer USA, Inc.*, 2016-NMSC-035, ¶ 8, 385 P.3d 619. In *Dalton*, the agreement at issue provided that either party could compel arbitration for "any claim or dispute, whether in contract, tort, statute or otherwise" but excluded arbitration for disputes within the small claims court's jurisdiction. *Id.* ¶ 3 (alteration and internal quotation marks omitted). Our Supreme Court held that the small claims exemption did not render the arbitration agreement substantively unconscionable because on its face, the exception applied bilaterally.[4] *Id.* ¶¶ 17-23. The Court's decision in *Dalton* "was heavily grounded in the fact that the arbitration agreement in that case exempted any claim—not just specific claims—from mandatory arbitration as long as that claim did not exceed $10,000." *Peavy*, 2020-NMSC-010, ¶ 23 (citing *Dalton*, 2016-NMSC-035, ¶ 22). As in *Dalton*, the arbitration agreement in this case applies bilaterally, exempting any claim under $50,000, and not just specific claims. Consequently, we are unconvinced that the exception unambiguously benefits the drafting party.

**{15}** We emphasize, however, that our substantive unconscionability analysis requires that we "determine the legality and fairness of the contract terms themselves." *Peavy*, 2020-NMSC-010, ¶ 20 (internal quotation marks and citation omitted). In doing so we not only examine the terms on the face of the contract but also "consider the practical consequences of those terms." *Dalton*, 2016-NMSC-035, ¶ 8. We also keep in mind that "[g]ross unfairness is a bedrock principle of our unconscionability analysis." *Id.* ¶ 21.

**{16}** To that end, we reiterate that Plaintiff is not required to make a particular evidentiary showing to meet her burden. However, where—as in this case—the contract terms at issue appear on the face of the agreement to apply bilaterally, evidence may

---

3Although the arbitration agreement includes an exemption for administrative proceedings stemming from involuntary transfer or discharge, our case law acknowledges that "under both federal and state law, resident-discharge-related issues are to be handled in administrative proceedings with notice and a hearing and the right to appeal the decision, thus requiring the exclusion of resident-discharge-related issues from arbitration agreements." *Bargman*, 2013-NMCA-006, ¶ 18.

4The Court also held that the arbitration agreement's exclusion of self-help remedies, such as non-judicial repossession, was irrelevant to the issue of substantive unconscionability because by definition they are extra-judicial remedies and therefore do not qualify as disputes under the arbitration agreement. *Dalton*, 2016-NMSC-035, ¶¶ 12-15.

be necessary to show the practical inequity of the terms. This is not to say that a facially bilateral agreement is inherently conscionable, but rather, an acknowledgment of the parties' right to contract and our duty to evaluate each claim of unconscionability on a case-by-case basis. *See Figueroa*, 2013-NMCA-077, ¶ 30 ("While we agree that arbitration obligations do not have to be completely equal, and that parties may freely enter into reasonable agreements to exempt certain claims from arbitration . . . [a d]efendant cannot avoid the equitable doctrine of unconscionability by drafting an agreement that reserves its most likely claims for a judicial forum, and provides some exemptions from arbitration to the resident so that there is some appearance of bilaterality, when that exemption is completely meaningless in practicality because the resident would rarely, if ever, raise that type of claim against the nursing home."); *see also Peavy*, 2020-NMSC-010, ¶ 13 ([N]othing in [our case law] expressly lays down a bright-line, inflexible rule that excepting from arbitration any claim most likely to be pursued by the defendant drafter will void the arbitration clause as substantively unconscionable. Cases should still be examined on a case-by-case basis." (omission, internal quotation marks, and citation omitted)).

**{17}** With the foregoing in mind, even if we assume that Defendant is most likely to make collection claims, we cannot rely on case law alone to assume that Defendant's claims are not likely to surpass the $50,000 exception. *Compare Figueroa*, 2013-NMCA-077, ¶ 31 (concluding as self-evident that "guardianship, *collection*, and eviction proceedings would be the most likely claims of the nursing home" (emphasis added)), *with Peavy*, 2020-NMSC-010, ¶ 27 (discussing testimony that "the range of debt owed by a [nursing home] resident typically ranged from $1-$10,000, but . . . could exceed $10,000, even getting as high as $76,000"). The record in this case does not include any evidence in this regard. Absent evidence that, for example, Defendant often brings collections claims and that the majority of those claims are less than $50,000, thereby avoiding the arbitration agreement, the record contains no evidence from which we can conclude that the arbitration agreement is one-sided. *See Chan v. Montoya*, 2011-NMCA-072, ¶ 9, 150 N.M. 44, 256 P.3d 987 ("The mere assertions and argument of counsel are not evidence." (internal quotation marks and citation omitted)).

**{18}** Based on the forgoing, and applying *Dalton*, we conclude that the terms of the arbitration agreement are not facially one-sided. We therefore do not proceed to the second step of the *Peavy* analysis. *See* 2020-NMSC-010, ¶ 21 ("[I]f the court determines the arbitration agreement is facially one-sided, the court should allow the drafting party to present evidence that justifies the agreement is fair and reasonable, such that enforcement of the agreement would not be substantively unconscionable."). Given the arbitration agreement's language and the lack of evidence demonstrating that the arbitration agreement otherwise excludes only Defendant's most likely claims, we hold that the arbitration agreement is not substantively unconscionable.

**CONCLUSION**

**{19}** For the foregoing reasons we reverse the district court's order denying Defendant's motion to compel and remand to the district court for proceedings consistent with this opinion.

**{20}** **IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**KRISTINA BOGARDUS, Judge**