This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-39466**

**PATRICIA PEDREGON,**

Plaintiff-Appellee,

v.

**TITLEMAX OF NEW MEXICO INC. and ANGELICA VIGIL,**

Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Matthew J. Wilson, District Court Judge**

Feferman, Warren & Mattison
Nicholas H. Mattison
Albuquerque, NM

for Appellee

Atkinson, Baker & Rodriguez, P.C.
Justin D. Rodriguez
Owen Barcala
Albuquerque, NM

for Appellants

### MEMORANDUM OPINION

**HANISEE, Judge.**

**{1}** Defendants TitleMax of New Mexico, Inc. and Angelica Vigil (collectively, TitleMax) appeal the denial of their motion to compel arbitration in a case brought by a title loan borrower for fraud and violations of the Unfair Practices Act. NMSA 1978, § 57-12-2(D) (2019). After an evidentiary hearing, the district court concluded that the arbitration agreement at issue was substantively unconscionable, and therefore

unenforceable. TitleMax argues the district court's denial of its motion misinterpreted New Mexico unconscionability jurisprudence and should be preempted by the Federal Arbitration Act (FAA). 9 U.S.C. § 2. Applying *Peavy ex rel. Peavy v. Skilled Healthcare Grp., Inc.*, 2020-NMSC-010, 470 P.3d 218, we agree with the district court's ruling that the arbitration agreement is substantively unconscionable and affirm.

**DISCUSSION**

**I.          Unconscionability of Agreement**

{2}          "Arbitration agreements are a species of contract, subject to the principles of New Mexico contract law." *L.D. Miller Constr., Inc. v. Kirschenbaum*, 2017-NMCA-030, ¶ 18, 392 P.3d 194. Therefore, "we apply New Mexico contract law in [the] interpretation and construction of the [a]rbitration [a]greement." *Id.* "We apply a de novo standard of review to a district court's denial of a motion to compel arbitration." *Peavy*, 2020-NMSC-010, ¶ 9 (internal quotation marks and citation omitted). "[W]e review whether a contract is unconscionable as a matter of law." *Cordova v. World Fin. Corp. of N.M.*, 2009-NMSC-021, ¶ 11, 146 N.M. 256, 208 P.3d 901.

{3}          "Unconscionability is an affirmative defense to contract enforcement." *Peavy*, 2020-NMSC-010, ¶ 10. "The party alleging unconscionability bears the burden of proving that a contract is unenforceable on that basis." *Id.* "The burden of proving unconscionability, however, does not require an evidentiary showing." *Id.* "In other words, the party bearing the burden of proving unconscionability does not have to make any particular evidentiary showing, but rather can persuade the fact[-]finder by analyzing the contract on its face." *Id.* (internal quotation marks and citation omitted).

{4}          *Peavy* articulates a two-step analysis used to evaluate substantive unconscionability for potentially unreasonably one-sided contracts. *Id.* ¶ 20. First, "[t]he [district] court should look to the face of the arbitration agreement to determine the legality and fairness of the contract terms themselves." *Id.* (internal quotation marks and citation omitted). If those terms are facially one-sided, appearing to advantage one party over the other, the court should find these provisions presumptively unfair and unconscionable. Second, if the court determines the arbitration agreement is presumptively unfair and unconscionable, "the court should allow the drafting party to present evidence that justifies the agreement is fair and reasonable, such that enforcement of the agreement would not be substantively unconscionable." *Id.* ¶ 21.

{5}          We first review the district court's determination that the arbitration agreement was presumptively unconscionable—on its face—based upon the unfairness of the terms contained therein. *Id.* ¶ 20. The agreement at issue excludes from arbitration actions to foreclose on the collateral vehicle or to stop TitleMax from taking the vehicle. Apart from a bilateral small claims exception, the agreement requires all other "disputes" to proceed to arbitration.

**{6}**     TitleMax asserts that the bilateral nature of the agreement—allowing foreclosure issues brought by either side to proceed in court—treats both borrower and lender equally. However, the standard for an unconscionable contract is not whether it is bilateral. Rather, as reiterated in *Peavy*, a contract provision is unconscionable "if its exemptions are unreasonably and unfairly one-sided." *Id.* ¶ 18.

**{7}**     We agree with the district court's finding that TitleMax's most likely claim, indeed, perhaps its only claim, is foreclosure in event of default to repossess a vehicle and claim a deficiency. TitleMax's district director testified that TitleMax had no likely claims against borrowers besides judicial repossession and deficiency cases. With the exception of both parties' small claims, the agreement permits only repossession and deficiency cases to be filed in the district court.

**{8}**     Nonetheless, TitleMax argues that judicial foreclosure is not its most likely cause of action because of its frequent use of "self-help" remedies. But the possibility that a given issue might be resolved before filing a lawsuit or seeking arbitration does not affect our analysis. The contract permits TitleMax to exercise its right to judicial remedy either in addition to or in place of self-help or other avenues of collateral recovery.

**{9}**     This provision—establishing the rights of the signatories to the contract at issue—is most relevant to our analysis. The provision permits the lender to retain the option to pursue their most likely claim in court, while the borrower's right to access the courts is extinguished for their most likely claims: claims of fraud or unfair practice claims. *Rivera v. Am. Gen. Fin. Servs., Inc.*, 2011-NMSC-033, ¶ 53, 150 N.M. 398, 259 P.3d 803. This constitutes an unreasonably and unfairly one-sided agreement. *See Peavy*, 2020-NMSC-010, ¶ 18.

**{10}**     TitleMax cites *Dalton v. Santander Consumer USA, Inc.*, 2016-NMSC-035, 385 P.3d 619, for several propositions including that the reservation of self-help remedies should not be considered when evaluating substantive unconscionability because it is outside of the judicial process. We agree and have excluded self-help repossession from our analysis. The unfairness here is not the availability of self-help repossession to TitleMax, it is the reservation by TitleMax of the right to judicial resolution of repossession and deficiency cases while the borrower is required to proceed by arbitration on her central claims. In *Dalton*, the sole exception to the arbitration agreement between borrower and lender was a carve-out for any case brought by either party below $10,000 to go to small claims court. *Id.* ¶ 3. There was no exception to arbitration for judicial repossession and deficiency cases. *Id.* We echo the analysis of our Supreme Court in *Peavy*—under the heading "Defendants misapply *Dalton*"—that this case is distinguishable from *Dalton* because it involves an agreement where the lender has created an exception from arbitration for its most likely claim. 2020-NMSC-010, ¶ 23.

**{11}**     To this point, Plaintiff alleges that her most likely claims are for fraud or other misrepresentation that amount to more than $10,000. This contention is seemingly uncontested by TitleMax on appeal. Wisely so—our Supreme Court previously has

noted that a borrower's most likely claims against a lender are about the "validity of any of [the lender's] form loan or arbitration documents, issues about the terms of [the lender's] contract, claims for fraud and misrepresentation, grievances related to servicing or collection, or claims based on federal or state consumer protections, such as the New Mexico Unfair Practices Act." *Cordova*, 2009-NMSC-021, ¶ 27. Under this contract, Plaintiff would have no choice but to send her most likely claims to arbitration. Thus, we find that this agreement on its face affords TitleMax access to the courts for its most likely cases while precluding Plaintiff from access to court for her most likely cases, which is unreasonably and unfairly one-sided.

## II. Opt-Out Provision

**{12}** TitleMax asserts that the inclusion of an opt-out provision in an arbitration agreement remedies any unconscionability as a matter of law. They reason that Plaintiff has the opportunity to reject the arbitration agreement within sixty days of signing the loan, giving Plaintiff a choice about whether to accept the otherwise unconscionable arbitration provision.

**{13}** We decline TitleMax's invitation to find that an opt-out provision renders an otherwise unconscionable agreement fair and conscionable as a matter of law. A provision to refuse arbitration could provide adequate procedural protection to the signatories of otherwise unconscionable adhesion contracts, but this is a case alleging substantive, not procedural unconscionability. TitleMax provides us many examples of other jurisdictions where an opt-out provision was relied on to support a finding against unconscionability. However, those other cases indicate that opt-out provisions provide *procedural* protection, and do not speak to the substantive elements of a contract. *See Evangelical Lutheran Good Samaritan Soc'y v. Moreno*, 277 F.Supp.3d 1191, 1236 (D.N.M 2017) (finding that an opt-out provision contributed to a finding against procedural unconscionability); *Larsen v. Citibank FSB*, 871 F.3d 1295, 1313 (11th Cir. 2017) ("In light of . . . its opt-out procedure, the 2004 amendment to the arbitration provision was not enacted in a *procedurally* unconscionable manner." (emphasis added)); *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016) ("Uber argues that the delegation provisions could not have been *procedurally* unconscionable because both agreements gave drivers an opportunity to opt out of arbitration altogether." (emphasis added)). New Mexico courts hold that certain contracts can be so substantively unconscionable that a showing of procedural unconscionability is unnecessary. *Cordova*, 2009-NMSC-021, ¶ 24.

**{14}** "Unconscionability is an equitable doctrine, rooted in public policy, which allows courts to render unenforceable an agreement that is unreasonably favorable to one party while precluding a meaningful choice of the other party." *Id.* ¶ 21. TitleMax accordingly argues that an opt-out provision provides a meaningful choice for Plaintiff, and that choice should overcome other concerns about the unconscionability of the agreement. We reject this argument.

**{15}** First, we have previously stated in *Clay v. New Mexico Title Loans, Inc.*, 2012-NMCA-102, ¶ 36, 288 P.3d 888, that a borrower applying for a high-interest loan is unlikely to exercise their right to opt out of arbitration agreement, especially when the opt-out cannot be executed in the document itself. In the present case, the opt-out agreement required mailing a separate written statement to TitleMax's legal department in Savannah, Georgia—an address that is found on a separate page. The borrower cannot send the written notice electronically, and must do so within sixty days of signing the loan. Regardless of the existence of whatever business reasons might justify these limitations, the opt-out provision is not so easy to invoke as to quell our concerns about the unconscionability of the agreement terms. Moreover, the option to reject the agreement expires after only two payments; the meaningful choice to pursue judicial or arbitral remedy therefore was waived well before Plaintiff contemplated suing at the time of her default, six months after the final loan. As in *Clay*, we are unconvinced this is a meaningful choice for a borrower prepared to pay $34,084.91 over four years for a loan of $6,404.13. The evidence at hearing in the district court confirms the impracticality of this as a remedy. The district court heard testimony on whether any of TitleMax's hundreds of New Mexico borrowers elected to opt-out of the arbitration agreement. TitleMax now asserts that the district court improperly found that no borrower had ever exercised the right to reject the arbitration agreement. The district court's findings and conclusions said, in pertinent part, TitleMax's district director "testified that no borrower or consumer has ever exercised their right to opt out of arbitration. In any case, an arbitration agreement can still be unfairly one-sided or illusory despite the existence of an opt[-]out provision." TitleMax asserts this finding is unsupported by substantial evidence because counsel provided the district manager with an example of one New Mexico TitleMax customer who successfully rejected the arbitration agreement. We read the district court's finding not to be a statement about the actual number of opt-outs by New Mexico clients, but rather that testimony indicated the rarity of opt-outs taken compared to the hundreds of loans issued by TitleMax. Though the district court elected to omit the single counter-example brought to the director's attention on redirect, the district court's finding was supported by substantial evidence as it was not an absolute statement. Whether one or no customers have rejected the agreement, the finding still exemplifies how meaningless the opt-out provision is to all or almost all customers.

### III.    Federal Law Preemption

**{16}** TitleMax also asserts that our state's jurisprudence on unconscionability as applied to arbitration agreements—especially as articulated in *Peavy*—violates the FAA. *See* 9 U.S.C. § 2. The FAA provides arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* "Congress enacted the FAA to counteract judicial hostility to arbitration and to ensure that states place arbitration agreements on equal footing with other contracts." *Strausberg v. Laurel Healthcare Providers, LLC*, 2013-NMSC-032, ¶ 51, 304 P.3d 409 (internal quotation marks and citation omitted). The FAA preempts state law that "prohibits outright the arbitration of a particular type of claim" as well as any "state-law principle that takes its meaning precisely from the fact that a contract to

arbitrate is at issue." *Id.* (internal quotation marks and citation omitted). However, Congress did not intend to entirely displace state law governing contract formation and enforcement. *Id.* ¶ 52 (citing *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468 (1989)).

**{17}** New Mexico courts review arbitration agreements under generally applicable contract unconscionability analysis. *See Cordova*, 2009-NMSC-021, ¶ 37. Our Supreme Court's unconscionability doctrine was not developed to invalidate arbitration agreements, and the doctrine applies in the same manner to all contract clauses. *Id.* ¶ 38. "The FAA is intended to promote inexpensive, fair, and reasonable arbitration alternatives to litigation." *Id.* "It is not a license for businesses to take advantage of consumers by the imposition of one-sided, unfair, and legally unconscionable arbitration schemes." *Id.*

**{18}** We reiterate our principle that we adjudicate based on our Supreme Court precedent, even when a United States Supreme Court decision seems contra. *See Figueroa v. THI of N.M. at Casa Arena Blanca, LLC*, 2013-NMCA-077, ¶ 15, 306 P.3d 480 (stating we are bound by New Mexico Supreme Court precedent). As such, we apply our precedent, even when federal circuit courts interpret United States Supreme Court cases to be in potential conflict with our state jurisprudence. *See THI of N.M. at Hobbs Ctr., LLC v. Patton*, 741 F.3d 1162, (10th Cir. 2014). We note that the criticism of New Mexico arbitration decisions by a federal circuit court preceded our Supreme Court's decision in *Peavy*, which addressed the substance of that criticism.

**{19}** TitleMax also asserts that the two-step analysis in *Peavy* applies only to arbitration agreements, which is allegedly impermissible under the FAA. We do not agree with TitleMax's' reading of *Peavy*. As a doctrinal matter, New Mexico courts have always emphasized how the unconscionability analysis—under *Peavy* and other precedent—is a coherent and cohesive part of broader contract doctrine. *See* 2020-NMSC-010, ¶¶ 10-12, 18-19, 20-21; *Rivera*, 2011-NMSC-033, ¶¶ 15-16. *Peavy*'s two-step analysis requires the reviewing court to look at the face of the agreement to determine the "legality and fairness of the contract terms themselves," then, in the event the agreement appears not to be so, allow the drafting party to present evidence to rebut the presumption that the exceptions are unfair and unreasonable. 2020-NMSC-010, ¶¶ 20-21 (internal quotation marks and citation omitted). Our Supreme Court describes the application of the rule using the general term "contract" rather than the specific term "arbitration agreement." *Peavy* is the procedure by which New Mexico courts can determine if *any* contract term is unfairly one-sided. Indeed, the federal district court has already applied *Peavy* to a contract that gave a right to recover attorney fees to only one party in litigation. *Lamar Advert. Sw., Inc. v. Grandview Realty, LLC*, Civ. No. 21-230 GJF/CG, 2022 WL 1746766 (D.N.M. May 31, 2022). We are unpersuaded that *Peavy*'s formulation of "an arbitration agreement is substantively unconscionable if its exemptions are unreasonably and unfairly one-sided" does not apply to other types of contract provisions. 2020-NMSC-010, ¶ 18.

**CONCLUSION**

**{20}** For the above reasons, we affirm.

**{21}  IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**SHAMMARA H. HENDERSON, Judge**

**JANE B. YOHALEM, Judge**